[No. A111421. First Dist., Div. One. Oct. 18, 2006.]

SHEILA M. WEBER, Plaintiff and Appellant, v.
JOHN CRANE, INC., Defendant and Respondent.

## COUNSEL

Paul, Hanley & Harley, Philip A. Harley and Deborah R. Rosenthal for Plaintiff and Appellant.

Hassard Bonnington, Philip S. Ward, Robert L. Nelder and Richard G. Katerndahl for Defendant and Respondent.

## OPINION

**STEIN, J.**—A manufacturer or supplier of a product containing asbestos is sued for personal injuries allegedly resulting from plaintiff's exposure to asbestos. Defendant moves for summary judgment, supporting the motion with plaintiff's deposition testimony that he did not recall defendant's name and did not recall whether he worked with any product bearing defendant's name. The question is whether this evidence, without more, meets defendant's initial burden of producing evidence that plaintiff does not possess, and cannot reasonably obtain, evidence defendant was a cause of plaintiff's injuries, so that the burden shifts to plaintiff to show a triable issue of fact exists as to causation. We hold that it does not, and reverse the judgment entered here.

### BACKGROUND

On September 29, 2004, Joseph and Sheila M. Weber[1] brought suit against numerous manufacturers, suppliers and contractors. Plaintiffs alleged Joseph Weber (Weber) suffered mesothelioma from exposure to asbestos during the nearly 40 years he had worked as a machinist, equipment operator, and laborer at many different sites and for many different employers. Plaintiffs named John Crane, Inc. (John Crane), as a defendant, alleging Weber had been exposed to asbestos-containing products manufactured, sold or supplied by John Crane from 1960 to 1964, when he worked on or around naval vessels. The case was granted preferential status and set for trial on March 28, 2005. Weber's deposition was taken in November 2004.

---

[1] Joseph Weber died on May 10, 2006. Sheila M. Weber has been appointed his successor in interest for purposes of prosecuting this appeal. (Code Civ. Proc., §§ 377.20, 377.31.) To avoid unnecessary confusion, we will use the term "plaintiffs" although, technically, Mrs. Weber is the sole plaintiff.

On January 6, 2005, John Crane moved for summary judgment, asserting there was no triable issue of fact John Crane was a cause of Weber's mesothelioma. John Crane cited Weber's testimony that while he was familiar with the name "Crane," he had not heard of the name "John Crane, Inc." and did not associate any product or service with that name. He did not recall ever working with or around a product manufactured by John Crane. Weber assumed the Navy would have documents that would provide information as to whether he had worked with or around a John Crane product, but he had no personal knowledge of any such documents. He could not recall whether he ever had been exposed to asbestos as a result of anything that John Crane did or did not do. He also could not recall having heard of a company named Crane Co., or the Crane Packing Company, and could not recall if he ever worked with or around a Crane Packing Company product. Weber stated that he did not recall knowing about any documents or witnesses that could provide information to that effect, and did not know if he had been exposed to asbestos as a result of anything the Crane Packing Company had or had not done. John Crane contended Weber's testimony showed that plaintiffs could not establish that John Crane was a cause of Weber's disease.

Plaintiffs argued in the trial court, and argue here, that John Crane did not produce sufficient evidence to shift to plaintiffs the burden of showing a triable issue of one or more material facts exists as to causation. They pointed out that John Crane had not conducted any "special discovery" designed to ascertain what evidence plaintiffs had beyond the statements of Weber himself. Plaintiffs also submitted the deposition testimony of Weber that he had worked as a machinist aboard the USS Hanson for four years, beginning in 1960, which work included repacking valves with a grayish white gasket material and putting packing back in pumps that had been disassembled. Weber named several coworkers or shipmates who had worked with him on board the Hanson. He had spoken to one a few weeks previously and to two others within the last two or three years. Weber stated he had addresses and telephone numbers for these persons, but he did not have that information with him at the deposition. There is no evidence that John Crane ever followed up on that information. There also is no evidence that plaintiffs affirmatively provided John Crane with the addresses or telephone numbers of these witnesses, although counsel at the deposition asked Weber to make that information available to his attorney. In addition, plaintiffs attached a list of identification witnesses plaintiffs intended to call against various defendants. The list included the names of two additional persons identified as plaintiffs' witnesses against John Crane. At the February 22, 2005 hearing on John Crane's motion, plaintiffs' counsel reported that the two listed individuals had been deposed, asserting that both had identified John Crane, presumably in connection with a product used on the Hanson.

At the hearing on John Crane's motion, the court stated, "[T]he cases are fairly clear that if a plaintiff has no idea about a connection between himself and the defendant, then that by itself can be enough to shift the burden." The court pointed out that plaintiffs had produced no evidence that the persons named by Weber had said anything to suggest they had information about Weber's exposure to John Crane's products. It reasoned that in the absence of any evidence these persons had some information that would tie John Crane to Weber's injuries, John Crane had no obligation to depose them. The court also pointed out that plaintiffs had not provided any contact information about those individuals. The court then explained, "[W]hat I am concerned about is we don't have any suggestion that anybody knows anything—in these moving papers, in this record knows anything about Crane. And the fact that three other people worked in the engine room in my view isn't enough to [satisfy plaintiffs'] burden on the hopes that one of them is going to know something about Crane." The court granted the defense motion, pointing out that plaintiffs could move for reconsideration if they had new deposition testimony linking John Crane to Weber's injuries. Plaintiffs' subsequent motion for reconsideration was denied.

DISCUSSION

## I.

## Summary Judgment

A motion for summary judgment must be granted if all of the papers submitted show "there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . ." (Code Civ. Proc., § 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established, or there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. (*Id.,* subd. (p)(2).)

The "party moving for summary judgment bears an initial burden of production to make a prima facie showing of the nonexistence of any triable issue of material fact; if he carries his burden of production, he causes a shift, and the opposing party is then subjected to a burden of production of his own to make a prima facie showing of the existence of a triable issue of material fact. . . . A prima facie showing is one that is sufficient to support the position

of the party in question. [Citation.] No more is called for." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850–851 [107 Cal.Rptr.2d 841, 24 P.3d 493], fns. omitted (*Aguilar*).) The defendant is not required conclusively to negate an element of the plaintiff's cause of action. The defendant need only show the plaintiff cannot establish at least one element of the cause of action, such as by showing the plaintiff does not possess, and cannot reasonably obtain, needed evidence. (*Id.* at pp. 853–854.) However, "[s]ummary judgment law in this state . . . continues to require a defendant moving for summary judgment to present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence. . . . The defendant may, but need not, present evidence that conclusively negates an element of the plaintiff's cause of action. The defendant may also present evidence that the plaintiff does not possess, and cannot reasonably obtain, needed evidence—as through admissions by the plaintiff following extensive discovery to the effect that he has discovered nothing." (*Id.* at pp. 854–855, fn. omitted.)

We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor. (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100 [41 Cal.Rptr.3d 229] (*Andrews*).)

## II.

### Causation

■ A plaintiff alleging asbestos-related injury has the burden of proving there is a "reasonable medical probability based upon competent expert testimony that the defendant's conduct contributed to plaintiff's injury." (*Lineaweaver v. Plant Insulation Co.* (1995) 31 Cal.App.4th 1409, 1416 [37 Cal.Rptr.2d 902].) Factors relevant to assessing whether such a medical probability exists include frequency of exposure, regularity of exposure and proximity of the asbestos product to the plaintiff. (*Ibid.*) The plaintiff, accordingly, cannot prevail against a defendant without evidence that the plaintiff was exposed to asbestos-containing materials manufactured or furnished by the defendant with enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing the plaintiff's injuries. (*Rutherford v. Owens-Illinois, Inc.* (1997) 16 Cal.4th 953, 975–976 [67 Cal.Rptr.2d 16, 941 P.2d 1203]; *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1103 [120 Cal.Rptr.2d 23] (*McGonnell*).)

## III.

### Defendant's Initial Burden of Production

John Crane's position is that it made out a prima facie case that plaintiffs would be unable to establish that Weber had been exposed to a John Crane product, by submitting evidence that Weber had no recall of the name John Crane, Inc., and could not associate any product with that name. This position is not supported by logic or by the relevant case law.

■ That Weber was unable to recall whether he worked around a John Crane product over 40 years ago suggests only that plaintiffs will not be able to prove their case with Weber's deposition testimony. It cannot be inferred that Weber would have been unable to recognize a John Crane product had he been shown one, or had he been shown its packaging or its logo. It also cannot be inferred that there is no witness or other evidence linking John Crane to Weber's jobsite. Similarly, that Weber had no personal knowledge of documents retained by the Navy does not create an inference that the Navy has no such documents or that plaintiffs will be unable to produce them. In effect, John Crane attempts to shift the burden of producing evidence to plaintiffs by limiting its discovery to a single question that Weber could not be expected to answer affirmatively: his ability to recall products to which he had been exposed over 40 years ago. A negative response to that question simply does not create an inference either of nonexposure or of the inability to prove exposure by some other means.

■ Contrary to John Crane's position, and to the trial court's apparent understanding, the cases do *not* establish that a defendant shifts the burden of production to the plaintiff by showing that a plaintiff witness has no personal recall of the defendant's product. Under the standard enunciated in *Aguilar, supra,* 25 Cal.4th at pages 850–851, the defendant must make an affirmative showing that the plaintiff will be unable to prove its case by any means. The point was illustrated in *Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64 [81 Cal.Rptr.2d 360] (*Scheiding*), where the defendant attempted to meet its burden of persuasion by the simple device of asking no questions at all and then arguing that the burden shifted to the plaintiff because the record contained no evidence that the plaintiff had been exposed to the defendant's product. (*Id.* at p. 67.) The Second Division of this court rejected that argument, pointing out that while a defendant's summary judgment motion can consist of factually devoid discovery responses from which an absence of evidence can be inferred (*id.* at p. 83), "we can infer nothing at all with respect to questions which were neither asked nor answered." (*Id.* at p. 81.) The court held that "the burden should not shift without stringent review of the direct, circumstantial and inferential evidence." (*Id.* at p. 83.) The burden did not shift where the deposition and

interrogatories contained no questions aimed specifically at the presence or absence of the defendant at jobsites and there was no "all facts" interrogatory on the subject. "[The defendant's] presence was key to liability, and [the defendant] could have pursued further discovery. It is entirely possible plaintiffs could have supplied further information concerning [the defendant]. After all, their answers to the standard interrogatories detailed over 100 jobsites and work dates over a period of 42 years. And [the deposition of the plaintiff who suffered asbestos-related injury], which [the defendant] attended, spanned five days. This situation is easily distinguished from . . . those cases [in which] the courts could infer from an incomplete or evasive reply that the plaintiffs had no other facts to support their case." (*Ibid.*)

More recently, in *Andrews, supra*, 138 Cal.App.4th 96, the Second Division discussed a case in which the defendant *had* made the requisite showing. The defendant there, like John Crane here, submitted the plaintiff's deposition testimony that he had no knowledge whether he had been exposed to one of the defendant's asbestos-containing products. Unlike John Crane, the defendant also submitted the plaintiffs' nonresponsive answers to comprehensive special interrogatories designed to elicit information about the plaintiffs' exposure to the defendant's products. (*Id.* at pp. 104–105.) In light of the interrogatory questions, the plaintiffs' failure to provide any information in effect admitted that they had no further information. (*Id.* at pp. 106–107, fn. omitted.) "If plaintiffs respond to comprehensive interrogatories seeking all known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses. [¶] In short, [the defendant's] discovery was sufficiently comprehensive, and plaintiffs' responses so devoid of facts, as to lead to the inference that plaintiffs could not prove causation upon a stringent review of the direct, circumstantial and inferential evidence contained in their interrogatory answers and deposition testimony." (*Id.* at p. 107, fn. omitted.)

John Crane relies heavily on *McGonnell, supra*, 98 Cal.App.4th 1098. As here, the defendants in that case submitted evidence of the plaintiff's deposition testimony that, as far as he knew, he had never worked with the defendant's products or near others using those products, had never heard of the defendant and although recalling having seen bags of cement with the defendant's name on them, could not recall where he had seen the bags. (*Id.* at p. 1101.) In contrast to the situation here, the plaintiff's deposition testimony also established that he was able to recall and name the products with which he had worked, allowing an inference that he had not worked with any product he could not recall. "McGonnell was one of the best persons, if not the best person, to identify the various products and substances to which he had been exposed during his employment. At his deposition he was able to

identify the kinds of materials he worked with, and the brand names of some of the products he had used. He even remembered working with Sheetrock and joint compounds from U.S. Gypsum. His failure to place any Kaiser products at his place of employment shifted the burden to plaintiffs to produce some circumstantial evidence to establish exposure to Kaiser products." (*Id.* at p. 1104.) Evidence that the plaintiff had no difficulty recalling the products with which he had worked but was unable to recall the defendant's product allowed an inference that he had not worked with the defendant's product.

■ Two additional cases warrant mention. In *Hunter v. Pacific Mechanical Corp.* (1995) 37 Cal.App.4th 1282 [44 Cal.Rptr.2d 335], the defendant filed a motion for summary judgment after discovery had closed and the trial was fast approaching. (*Id.* at p. 1285.) The motion was supported by the plaintiff's deposition testimony establishing he was personally unaware of the defendant's activities at any jobsite where the plaintiff had worked. (*Id.* at p. 1289.) The appellate court, reasoning that California law paralleled comparable federal law (*id.* at p. 1287), found that this evidence satisfied the defendant's initial burden of production, ruling that the burden therefore had shifted to the plaintiff to produce facts tending to show a nexus between the defendant's activities and the plaintiff's injuries. (*Id.* at p. 1289.) Similarly, in *Chaknova v. Wilbur-Ellis Co.* (1999) 69 Cal.App.4th 962 [81 Cal.Rptr.2d 871], the plaintiffs did not refer to the defendant in response to contention interrogatories, and the exposed worker testified in his deposition that he never had heard of the former manufacturer of the defendant's products and could not recall using those products. (*Id.* at p. 976.) The court, following *Hunter,* held the plaintiffs' failure to provide evidence of the worker's exposure to the defendant's products, after ample time to undertake discovery, showed that the plaintiffs could not establish at least one element of their cause of action. (*Id.* at pp. 977–978.) In *Aguilar,* the Supreme Court expressly disapproved *Hunter* on this point, explaining that allowing a defendant simply to point out an absence of evidence to support an element of the plaintiff's cause of action "does not reflect summary judgment law as it has ever stood." (*Aguilar, supra,* 25 Cal.4th at pp. 854–855, fn. 23.) It follows that a defendant cannot shift the burden of producing evidence to the plaintiff without submitting something more than the evidence submitted in *Hunter* and *Chaknova.*

## IV.

## Defendant's Evidence Did Not Satisfy Its Initial Burden of Persuasion

While John Crane produced slightly more evidence than the defendant produced in *Scheiding, supra,* 69 Cal.App.4th 64, it produced less than that

produced by the defendants in *Andrews, supra,* 138 Cal.App.4th 96 and *McGonnell, supra,* 98 Cal.App.4th 1098. More to the point, unlike the defendants in *Andrews* and *McGonnell,* John Crane produced no evidence allowing an inference that plaintiffs neither possess, nor reasonably can obtain, any evidence that Weber was exposed to an asbestos-containing product manufactured or supplied by John Crane. John Crane did not support its motion with evidence that plaintiffs failed to provide meaningful responses to comprehensive interrogatories designed to elicit all the evidence plaintiffs had to support their contention of liability. John Crane also did not show that, after extensive discovery, plaintiffs asserted they had no additional information. It did not show that Weber, while able to identify some of the products with which he worked during the period in question, was not able to identify a John Crane product. It showed that Weber was unfamiliar with John Crane's name, but did not show that Weber was unable to recognize its products, packaging or logo. In addition, even if it might somehow be inferred that Weber would have recalled the name of the material he used to repack valves or pumps, there is no evidence from which it might be inferred that he knew the name of the packing material he *removed* from valves or pumps before repacking them. In short, all the evidence established was that Weber, without benefit of knowing what products John Crane manufactured or supplied, or what they looked like, or what John Crane's label or logo might have been, could not recall working with any John Crane product. A motion for summary judgment is not a mechanism for rewarding limited discovery; it is a mechanism allowing the early disposition of cases where there is no reason to believe that a party will be able to prove its case.

We hold that John Crane's evidence does not support an inference that plaintiffs do not possess, and cannot reasonably obtain, needed evidence, and thus the burden did not shift to plaintiffs to make a prima facie showing of the existence of any triable issue of material fact as to Weber's exposure to a John Crane product. We do not hold that a defendant never will be able to meet its initial burden of persuasion without propounding special interrogatories or engaging in extensive discovery. In *McGonnell, supra,* 98 Cal.App.4th 1098, for example, the defendant was able to negate causation simply by showing that the plaintiff would have identified the defendant's product had the plaintiff been exposed to it. We do not attempt to define the minimum evidence a defendant must produce to shift the burden to the plaintiff, but we do hold the defendant must in some way show that the plaintiff does not have and cannot reasonably obtain evidence of causation. As we find that the burden never shifted to plaintiffs to show the existence of a triable issue of fact as to causation, we do not determine if that burden might have been met by Weber's identification of several coworkers. We do not decide whether plaintiffs had an affirmative duty to provide defendant with a means of

contacting those witnesses.[2] We also do not decide the effect of counsel's assertion at the hearing that two witnesses had in fact identified John Crane.

CONCLUSION

The judgment is reversed.

Marchiano, P. J., and Swager, J., concurred.

Respondent's petition for review by the Supreme Court was denied January 3, 2007, S148309. Corrigan, J., did not participate therein.

---

[2] In *Andrews, supra*, 138 Cal.App.4th 96, the court found that the defendant met its initial burden of persuasion even though the plaintiffs identified several people who had been Andrews's coworkers and supervisors during the time of his exposure. The defendant there had asked the plaintiffs to identify each person having knowledge of the facts and also to identify the facts known regarding asbestos exposure. Under those circumstances, by failing to provide any information of known facts, the plaintiffs in effect stated they had no specific facts supporting their claim against the defendant. They also answered an interrogatory by asserting that they had no further information responsive to the question calling for specific facts. (*Id.* at p. 105.) Here, as John Crane did not ask plaintiffs to identify the facts supporting their claim, no inference can be drawn from their failure to provide such facts.