Filed 4/22/14  Fewster v. City of Escondido CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| IRMA FEWSTER, | D063733 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2012-00050268-CU-PO-NC) |
| CITY OF ESCONDIDO, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Robert P. Dahlquist, Judge.  Reversed.

Riley & Reiner and Raymond Lee Riley for Plaintiff and Appellant.

Jeffrey Robert Epp, City Attorney, Michael R. McGuinness, Assistant City Attorney, and Andrea M. Velasquez, Deputy City Attorney for Defendant and Respondent.

# I.

## INTRODUCTION

Plaintiff Irma Fewster appeals from a judgment entered in favor of defendant City of Escondido (the City) on her cause of action for premises liability after she tripped and fell on a public sidewalk where there was an approximate one and one-half-inch difference between sidewalk sections. The trial court granted the City's motion for summary judgment on the ground that the City had shown that Fewster could not establish one of the elements of her cause of action, i.e., to demonstrate that the dangerous condition was either created by the negligence or wrongful conduct of the City's employee(s), or that the City had either actual or constructive notice of the dangerous condition a sufficient time prior to the injury to have taken measures to protect against the condition.

On appeal, Fewster contends that the trial court erred in granting summary judgment in favor of the City. Specifically, Fewster takes issue with the trial court's conclusion that she could not demonstrate that the City had actual or constructive knowledge of the alleged dangerous condition. Fewster maintains that there remain issues in dispute regarding how long the alleged sidewalk defect was in existence and whether the City therefore had actual or constructive notice of the condition a sufficient time prior to Fewster's injury. Our review of the record on summary judgment indicates that the City did not meet its burden to establish that Fewster cannot establish one or more elements of her cause of action. We therefore reverse the trial court's judgment in favor of the City.

2

II.

FACTUAL AND PROCEDURAL BACKGROUND

On July 23, 2011, Fewster tripped and fell on a sidewalk in front of 505 North Fig Street in Escondido, California.  Fewster and her sister were on their way to a Home Depot store when they saw a garage sale that was taking place at 505 North Fig Street, so they stopped to take a look.  As Fewster and her sister were walking back to Fewster's car, Fewster tripped on a portion of uneven pavement and fell.  The accident occurred at approximately 11:00 a.m. on a sunny day.  Fewster estimated the height differential of the two sidewalk panels as approximately an inch and a half.  Fewster was personally unaware of how long the sidewalk had been in the condition she found it on the day of the incident.

Fewster filed her original complaint against the City in January 2012, asserting negligence as her sole cause of action.  Fewster filed an amended complaint alleging two claims for premises liability, with one count alleging negligence and the other count alleging a dangerous condition on public property.  Fewster later voluntarily dismissed the negligence count.

In October 2012, the City filed a motion for summary judgment.  The City argued that it was entitled to judgment based on two separate grounds.  First, the City argued that the sidewalk condition that caused Fewster's fall was trivial as a matter of law.  Second, the City argued that even if the condition was not trivial as a matter of law, Fewster had no evidence that the City created the condition, or that it had actual or constructive notice of the condition prior to her fall.  In support of its motion for summary judgment, the City

3

submitted two declarations and lodged excerpts of Fewster's deposition, as well as Fewster's written discovery responses.

According to the deputy director of maintenance and operations for the City, Richard O'Donnell, the City had no electronic record of any service requests for sidewalk repairs at the Fig Street address, dating back to 2001. O'Donnell stated that the first notice that the City received regarding the condition of the sidewalk in front of 505 North Fig Street was on December 21, 2011, arising from Fewster's claim for damages. In addition, a certified legal assistant in the office of the City Attorney attested to the fact that she attempted to survey the claims made to the City for damages between July 23, 2006 through July 23, 2011, and in her review, she did not find any claims or lawsuits related to the 505 North Fig Street sidewalk.[1]

The City also relied on certain discovery responses provided by Fewster. Among the special interrogatories served by the City on Fewster was the following: "If YOU contend that the CITY had actual notice or knowledge of the existence of the dangerous

---

[1]     Although the City attempts to suggest that it was "served with no lawsuits or claims relating to falls or injuries suffered as a result of the subject condition," in fact, the review of potential claims made to the City was for claims made between 2006 and 2011, and of those, the legal assistant was able to search only for claims that had been paid by the City, because only those records are retained in an electronic version beyond a two-year period. Denied claims apparently are sent for destruction two years after their denial, so the legal assistant was able to review only a subset of the denied claims. Since the legal assistant did not attest to the date on which she conducted her search, and because she was apparently able to find the records of some denied claims that had not yet been destroyed even though they had been sent for destruction, it is impossible to determine the time span that her search of the denied claims covered. In any event, it is clear that this search for claims did not include every claim made to the City between 2006 and 2011.

4

condition alleged in YOUR First Amended Complaint a sufficient time prior to the injury to have corrected it, identify when the CITY received such actual notice and the source of that notice." In response, Fewster stated, "Responding Party has insufficient information at this time to respond to this request. Discovery is continuing." Later, Fewster provided the following supplemental response:

> "On information and belief, Responding Party is informed and believes that Defendant, the City of Escondido . . . had actual notice of the defective and dangerous condition of the sidewalk at 505 N. Fig Street (the "Sidewalk") that Plaintiff tripped over causing her injuries. Plaintiff believes that the City had actual notice as early as February 23, 2006, when it repaired a "Meter Leak" at the Sidewalk; August 29, 2006, when it again repaired a "Meter Leak" at the Sidewalk; January 9, 2007, when it again repaired a "Meter Leak" at the Sidewalk; and July 30, 2009, when it removed graffiti at the Sidewalk location. . . ."

The City also requested from Fewster the following: "If YOU contend that the CITY should have known about the dangerous condition alleged in YOUR First Amended Complaint a sufficient time prior to the injury to have corrected it, state all facts upon which YOU base that contention." Fewster responded, "Responding Party has insufficient information at this time to respond to this request. Discovery is continuing." The City cited to these discovery responses in its "Separate Statement of Undisputed Facts."

A few months later, Fewster filed her opposition to the City's motion for summary judgment. In support of her opposition, Fewster submitted the declaration of her attorney, Raymond L. Riley, to which was attached the report of an expert retained by Fewster. Riley's declaration stated that he and the expert had visited the scene of the

5

incident. In addition, Riley recounted his belief about the expert's qualifications as a civil engineer. Fewster also submitted a "Separate Statement of Undisputed and Additional Facts."

The report attached to Attorney Riley's declaration, titled "Engineering Report, Fewster v. City of Escondido," was prepared by Fewster's expert, Henry M. Koffman, P.E. (the Koffman Report). Koffman visited the site on December 20, 2012. By that point in the time, the sidewalk had been repaired. Koffman had reviewed photographs of the sidewalk at 505 North Fig Street that showed an "elevation differential" occurring at the sidewalk expansion joint just south of a sewer manhole cover. According to Koffman, "Except in the case of earthquakes, sidewalk differential settlement occurs over a long period of time. It is apparent that this unsafe condition has existed for a long period of time." The report included as attachments several photographs of the site, sketches, portions of the building code, and City service request forms relating to 505 North Fig Street, as well as Koffman's curriculum vitae.

In response to Fewster's opposition, the City objected to the admissibility of the expert report submitted by Fewster, contending that the report was inadmissible hearsay under Evidence Code section 1200.

The trial court held a hearing on the City's motion for summary judgment on January 18, 2013, and took the matter under submission following oral argument.[2]

---

2    The court also heard at the same time the City's motion to set the deposition compensation of Fewster's expert witness. The court's ruling with respect to the City's deposition compensation motion is not at issue on appeal.

6

On January 24, 2013, the trial court issued a minute order in which it granted the City's motion for summary judgment in full. The trial court addressed the City's two arguments that the undisputed facts negate the existence of element 2, i.e. that the condition was dangerous, and element 4, i.e., that the condition was created by the negligent or wrongful conduct of a City employee and the City had actual or constructive notice of the condition, of a valid claim for damages for a dangerous condition on public property.

With respect to element 2, the trial court determined that after viewing the evidence in the light most favorable to Fewster, it could not conclude, as a matter of law, that the sidewalk condition was *not* dangerous. With respect to element 4, the trial court cited to the following "undisputed facts" which the City cited in its Separate Statement of Undisputed Facts:

> " '6. Prior to the accident, the City did not receive any service requests for sidewalk repairs in the area where Plaintiff fell nor did it receive notice that the subject condition even existed. 7. The first notice the City received regarding the condition was Plaintiff's claim December 21, 2011. 8. Prior to Plaintiff's fall, the City was served with no lawsuits or claims relating to falls or injuries suffered as a result of the subject condition. 9. Plaintiff has no evidence as to how long the condition existed prior to her fall. 10. Plaintiff has no evidence that the City negligently created the condition prior to her fall.' "

The trial court then stated that although Fewster "purports to dispute facts #6 – 10 offered by the City," the "only evidence cited by plaintiff to dispute these facts is a letter from Henry M. Koffman, an engineer retained by plaintiff as an expert witness." The court proceeded to sustain the City's hearsay objection to Koffman's letter, and concluded

7

that the City had "met its burden, as the moving party, to establish that plaintiff lacks evidence in support of element #4 of a valid claim for a dangerous condition of public property." After making this finding, the court shifted the burden to demonstrate the existence of a triable issue of fact to Fewster, and concluded that she had failed to present admissible evidence establishing the existence of a triable issue of fact.

The trial court entered judgment in favor of the City on February 28, 2013. Fewster filed a timely notice of appeal.

III.

DISCUSSION

A.    *Legal standards*

1.    *Standards on appeal from the granting of summary judgment*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet this burden, the defendant must show that one or more elements of the cause of action *cannot be established*, or that there is a complete defense to that cause of action. (*Ibid*.) A defendant seeking to prevail on the ground that one or more elements of the cause of action cannot be established *must make an affirmative showing that the plaintiff does not possess, and cannot reasonably obtain, evidence to prove her case*. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889 (*Gaggero*).) A defendant's burden can be met by relying on the opposing party's factually inadequate discovery responses if these responses show the plaintiff "will be unable to prove its case by any

8

means." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1439 (*Weber*); see *Scheiding v. Dinwiddie Construction Co*. (1999) 69 Cal.App.4th 64, 78-81.)

If the defendant does not present sufficient evidence to meet its initial burden, the court must deny the summary judgment motion. (*Aguilar*, *supra*, 25 Cal.4th at p. 850.)

Once the defendant satisfies its burden, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' [Citation.]" (*Aguilar*, *supra*, 25 Cal.4th at p. 849.) The plaintiff may not rely upon the mere allegations or denial of her pleadings to show a triable issue of material fact exists. (*Ibid*.)

We review a trial court's grant of summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) In completing our review, we assume the role of the trial court and redetermine the merits of the motion. In doing so, we strictly scrutinize the moving party's papers *so that all doubts as to whether any material triable issues of fact exist are resolved in favor of the party opposing summary judgment*. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.) Because summary judgment is a drastic procedure which denies the adversary party a trial, "[the motion] should be granted with caution." (*Colores v. Board of Trustees* (2003) 105 Cal.App.4th 1293, 1305.)

2. *Principles governing dangerous conditions on public property*

To prove a negligence cause of action, a plaintiff must show that the defendant breached a duty of due care and that the breach caused the claimed injuries. (*Smith v. Freund* (2011) 192 Cal.App.4th 466, 472.)

With respect to alleged dangerous conditions on public property, additional standards apply. The nature and extent of a public entity's liability for injuries suffered on its property is governed by the Government Claims Act. (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1129.) Under the Government Claims Act, "there is no common law tort liability for public entities in California; such liability is wholly statutory." (*In re Groundwater Cases* (2007) 154 Cal.App.4th 659, 688; see Gov. Code, § 810 et seq.[3])

The applicable provisions limiting when a public entity is liable for a dangerous condition of public property appear in sections 835 and 835.2. For example, section 835, part of California's Government Claims Act, provides:

> "[A] public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes [(1)] that the property was in a dangerous condition at the time of the injury, [(2)] that the injury was proximately caused by the dangerous condition, [(3)] that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and [(4)] that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."[4]

---

[3] Further statutory references are to the Government Code unless otherwise indicated. We refer to the act relevant to Fewster's claims as the Government Claims Act. (*Metcalf v. County of San Joaquin, supra,* 42 Cal.4th at p. 1126, fn. 1.)

[4] Section 830 defines a "dangerous condition" as "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." (*Id.*, subd. (a).) " 'Protect against' includes

10

In turn, Section 835.2 provides:

" (a) A public entity had actual notice of a dangerous condition within the meaning of subdivision (b) of Section 835 if it had actual knowledge of the existence of the condition and knew or should have known of its dangerous character.

"(b) A public entity had constructive notice of a dangerous condition within the meaning of subdivision (b) of Section 835 only if the plaintiff establishes that the condition had existed for such a period of time and was of such an obvious nature that the public entity, in the exercise of due care, should have discovered the condition and its dangerous character. On the issue of due care, admissible evidence includes but is not limited to evidence as to:

"(1) Whether the existence of the condition and its dangerous character would have been discovered by an inspection system that was reasonably adequate (considering the practicability and cost of inspection weighed against the likelihood and magnitude of the potential danger to which failure to inspect would give rise) to inform the public entity whether the property was safe for the use or uses for which the public entity used or intended others to use the public property and for uses that the public entity actually knew others were making of the public property or adjacent property.

" (2) Whether the public entity maintained and operated such an inspection system with due care and did not discover the condition."

" '[Constructive] notice may be imputed if it can be shown that an obvious danger existed for an adequate period of time before the accident to have permitted the [public entity], in the exercise of due care, to discover and remedy the situation . . . . ' [Citation.]" (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 842.)

Typically, the questions of whether a dangerous condition could have been discovered by reasonable inspection and whether there was adequate time for preventive measures are

repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition." (*Id*., subd. (b).)

11

questions of fact for a jury to answer. (*Id*. at pp. 842-843; *Rowland v. City of Pomona* (1947) 82 Cal.App.2d 622, 626 [whether a defective and dangerous condition existed for a sufficient length of time to constitute constructive notice, and whether a reasonable time to remedy the condition or to take action to protect the public against the condition existed are questions for the trier of fact to determine].)

B.    *Analysis*

The only ground on which the trial court relied in concluding that the City had met its burden to establish that Fewster cannot establish her cause of action for premises liability is its conclusion that the City established that Fewster "lacks evidence in support of" the element that the City had actual or constructive notice of the defective condition of the sidewalk.

The "undisputed facts" upon which the City bases its assertion that it has established that Fewster cannot prove this element are:

> "6. Prior to the accident, the City did not receive any service requests for sidewalk repairs in the area where Plaintiff fell nor did it receive notice that the subject condition even existed.  7. The first notice the City received regarding the condition was Plaintiff's claim December 21, 2011.  8. Prior to Plaintiff's fall, the City was served with no lawsuits or claims relating to falls or injuries suffered as a result of the subject condition.  9. Plaintiff has no evidence as to how long the condition existed prior to her fall.  10. Plaintiff has no evidence that the City negligently created the condition prior to her fall."

Even if we accept the position that these "facts" are "undisputed," they do not demonstrate that Fewster "will be unable to prove [her] case by any means." (*Weber,*

12

*supra*, 143 Cal.App.4th at p. 1439.)[5]  First, the "facts" identified as fact numbers 6, 7, and 8 go to whether the City had actual notice of the subject condition.  They do not eliminate the possibility that the City had constructive notice of the subject condition.  Further, the trial court specifically overruled the City's hearsay objection to "Attachment C" to the Koffman Report, although it sustained the City's hearsay objections to the Koffman Report's other attachments.  "Attachment C," which the court did not exclude, consists of copies of "service requests" made to the City regarding problems at the *505 North Fig Street address*, prior to Fewster's fall.  Although none of these claims was a specific report regarding the sidewalk height differential, the requests indicate that the City was notified in February 2006, August 2006, and January 2007 regarding "water leaking from the sidewalk" and that a "meter box" was "leaking."  These requests demonstrate that employees of the City were dispatched to 505 North Fig Street.  Although there is a question whether these particular City employees saw the subject condition (thereby putting the City on notice of the subject condition), this a question of

---

5       In fact, Fewster disputes each of these facts.  Although she attempted to dispute some of the facts based on the Koffman Report, to which the trial court sustained an evidentiary objection, Fewster also disputed whether the City had provided a sufficient evidentiary basis to support these facts.  We agree with Fewster that that City's statement of these "facts" is not necessarily supported by the actual evidence presented by the City.  For example, although the City asserts the following: "Prior to Plaintiff's fall, the City was served with no lawsuits or claims relating to falls or injuries suffered as a result of the subject condition," in fact, the evidence presented by the City demonstrates that *of the claims that a City employee was able to search* (i.e., in her nonexhaustive search, covering a limited time period), there did not appear to have been any claim made with respect to the subject condition.  As we explain, however, even if we assume that these "facts" are undisputed *and* supported by the evidence, they still do not establish that Fewster "will be unable to prove [her] case by any means."  (*Weber, supra,* 143 Cal.App.4th at p. 1439.)

fact. In other words, there remains an open question as to whether the City may have had actual notice of the subject defect, despite the City's attempt to establish otherwise.

Second, the "fact" identified as fact number 10 goes to whether a public employee's negligent or wrongful act or omission created the dangerous condition. However, Fewster has never asserted that an employee's act or omission created the dangerous condition. Rather, Fewster's position has been that the City had actual or constructive notice of the subject condition.[6]

Finally, the City appears to attempt to demonstrate that Fewster cannot establish that it had constructive knowledge of the subject condition through the "fact" identified as fact number 9: "Plaintiff has no evidence as to how long the condition existed prior to her fall." This assertion is insufficient to establish that Fewster *cannot reasonably obtain* evidence to establish that the condition existed for a significant period of time before her fall. (See *Gaggero, supra,* 108 Cal.App.4th at p. 889 [a defendant seeking to prevail on summary judgment by showing that the plaintiff cannot establish one or more elements of a cause of action must make an affirmative showing that the plaintiff does not possess, and cannot reasonably obtain, evidence to prove her case].) Further, nothing that Fewster states in her discovery responses demonstrates that she "will be unable to prove [her] case by any means." (*Weber, supra,* 143 Cal.App.4th at p. 1439.) Fewster has not admitted

---

[6] Again, element 4 of a claim for liability under section 835 can be established one of two ways. A plaintiff may prove either that "[a] negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition," or a plaintiff may prove that "[t]he public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition." (§ 835.)

14

that she will be unable to present evidence regarding the length of time the subject condition has existed, and, in fact, there may be evidence that she could gather and present to the court, such as testimony from individuals who live near 505 North Fig Street who witnessed the subject condition, or through an expert who could express an opinion as to the length of time it would take for that condition to have developed.[7]  In short, the City has not established through the evidence it presented in support of its motion for summary judgment that Fewster *cannot establish* the fourth element of her claim.

It is of no consequence that the trial court sustained the City's hearsay objection to the expert report that Fewster submitted in support of her opposition to the summary judgment motion.  "If the defendant fails to meet this initial burden [of production], it is unnecessary to examine the plaintiff's opposing evidence; the motion must be denied." (*Zoran Corp. v. Chen* (2010) 185 Cal.App.4th 799, 805.)  Under the applicable summary judgment standards, Fewster was required to submit her own affirmative evidence in response to the motion for summary judgment only if the City met its initial burden to establish that Fewster could not establish one or more elements of her claim.  As we have explained, the City did not meet this burden, and, therefore, the burden never shifted to

---

[7]     Although the trial court excluded the report provided by Fewster's expert because of the manner in which she submitted it (i.e., as an attachment to her attorney's declaration rather than through a declaration or deposition testimony from the expert himself), the evidence that Fewster attempted to submit demonstrates that Fewster may, in fact, already have evidence that would support a finding that the subject condition has existed for such a period of time that the City should have discovered the condition and its dangerous character in the exercise of due care.

15

Fewster to present affirmative evidence to demonstrate the existence of a triable issue of material fact.

Given that the trial court relied solely on the fourth element of Fewster's claim to grant summary judgment in favor of the City and rejected the City's alternative contention that Fewster also could not establish that the condition of the sidewalk was dangerous, we must reverse the trial court's judgment.

## IV.

## DISPOSITION

The judgment of the trial court is reversed.  Fewster is entitled to costs on appeal.

AARON, J.

WE CONCUR:

NARES, Acting P. J.

McDONALD, J.