Filed 4/3/15  Solorio v. Bisi CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| BETTY SOLORIO et al., | D065470 |
| Plaintiffs and Appellants, | |
| v. | (Super. Ct. No. ECU07514) |
| ROBERT BISI et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Imperial County, Jeffrey B. Jones, Judge.  Reversed.

Estey & Bomberger, Stephen J. Estey, R. Michael Bomberger; Arnold Law Firm, Robert Bruce Arnold, David Diaz; Kostic Law Firm and Ljubisa Kostic for Plaintiffs and Appellants.

Manning & Kass, Ellrod, Ramirez, Trester and Darin L. Wessel for Defendants and Respondents.

Plaintiffs Betty Solorio and Julio Jiminez (Plaintiffs) appeal a judgment after the trial court granted defendants Robert and Catalina Bisi's (Defendants) motion for

summary judgment in Plaintiffs' personal injury action against them.  On appeal, Plaintiffs contend the trial court erred by granting Defendants' motion for summary judgment because: (1) Defendants did not carry their initial burden of production to show Plaintiffs do not have, and cannot reasonably obtain, needed evidence to prove Defendants caused their injuries, and Defendants breached their duty of care; and (2) the trial court erred by shifting the burden of production to Plaintiffs, sustaining Defendants' objections to the declaration of Plaintiffs' expert, and concluding Plaintiffs did not meet their burden of production to make a prima facie case showing there is a triable issue of material fact precluding summary judgment for Defendants.

FACTUAL AND PROCEDURAL BACKGROUND

Since 2000, Defendants have owned a single level four-unit apartment building located at 407 Maple Avenue in Holtville.  The building is shaped like an "H," oriented in a north-south direction.  There are two carports located to its west.  The southern carport is constructed of stucco and wood, and the northern carport is constructed of metal.  To the west of Defendants' apartment complex is a dirt driveway and a similar apartment complex with an "H" shape, not owned by Defendants.

In March 2011, Plaintiffs and their family were residing in the northeast apartment of Defendants' building.  That apartment apparently has a patio on its west side.  At about 3:30 p.m. on March 7, Solorio was doing laundry on the patio when she was struck in the head by a sheet of plywood.  The plywood had red paint on one side, measured about 48 and 1/2 inches wide by 77 and 1/2 inches long, and weighed about 32.5 pounds.  Photographs of the carports' roofs show wood that had also been painted red.   However,

2

neither of Plaintiffs recalled ever seeing the plywood board in question on the roofs of, or elsewhere on, Defendants' property.

Data from the weather station in Imperial, California, shows the wind on March 7, 2011, averaged 21 miles per hour from a west by southwest direction, with a maximum wind speed of 40 miles per hour and a maximum gust speed of 51 miles per hour. Between 2:53 p.m. and 3:53 p.m. on that day, the wind had the same direction with wind speeds of about 33.4 miles per hour and gust speeds of about 48.3 and 42.6 miles per hour.

Plaintiffs filed a complaint against Defendants alleging causes of action for negligence and premises liability.[1] The complaint alleged the unsecured or inadequately secured plywood board on the rooftop of Defendants' property constituted a dangerous condition in its high wind location and Defendants breached their duty of care to maintain their property in a reasonably safe condition.

Defendants filed a motion for summary judgment. Noting that neither of Plaintiffs remembered seeing the plywood board prior to the incident, Defendants asserted Plaintiffs intended to rely on the opinion of an expert, Voyko Banjac, a chemical analysis of paint samples by Vincent Snodgrass, and photographs of the property to show the board likely came from one of the roofs of Defendants' property. Defendants asserted that Plaintiffs' demonstrative exhibits "indicate that they will attempt to show there are other pieces of wood at the 407 Maple Avenue property with red paint, that satellite

_____

[1]      Jiminez also alleged a cause of action for loss of consortium.

3

photographs suggest the potential existence of a second plywood board on top of the [northernmost] metal carport roof, and a contention that the west by [southwest] winds blew the plywood board up over the roof of the apartment building across the neighbor's patio and into . . . Solorio's patio." Defendants argued Plaintiffs did not have any admissible evidence to show the plywood board came from their property. In so arguing, they asserted Banjac's anticipated opinions lacked foundation, were improper expert opinion, and were speculative, and therefore Plaintiffs had no admissible evidence to show the board originated on their property—on which the elements of breach of duty and causation were based. Defendants also argued "[t]he existence of similar paint color and formulation cannot support a finding that the plywood came from [Defendants'] property especially in light of the similarly built apartment building to the west also had red plywood siding." Defendants also argued that, assuming Plaintiffs had evidence showing the board originated on one of the roofs of their property, Plaintiffs nevertheless had no evidence to show Defendants breached their duty of care regarding that board.

In support of their motion for summary judgment, Defendants submitted a separate statement of undisputed material facts and various exhibits, including photographs, Banjac's preliminary assessment report, and Snodgrass's analytical testing report. Banjac's preliminary assessment report stated he has a Ph.D. in engineering and professional expertise in the areas of engineering, physics, mechanics, and safety assessment. His report described the layout of Defendants' property, including Plaintiffs' patio, and the heavy winds reported on March 7, 2011, and their direction from the west-southwest. Banjac had reviewed photographs and data regarding the property and had

4

personally inspected the property and the plywood panel. Banjac stated his preliminary

assessment regarding the likely immediate origin of the plywood panel as follows:

> "Based on available information, our analysis, and application of
> scientific principles, I believe that the most likely origin of the panel
> was the roof surface of the premises in question (namely, the 4-plex
> roof, the larger carport roof, or the smaller carport roof). This
> opinion is based on two factors: (1) the likely motion and trajectory
> of the panel on the day of the incident, and (2) confirmation of the
> panel's origin within the premises in question as a result of forensic
> chemical analysis."

Banjac explained his reasoning for that opinion, stating in part:

> "On the day of the incident, [the plywood panel] was subject to
> sustained wind speeds of 20-51 mph. Given the shape of the panel,
> those speeds are sufficient to enable an upward-oriented gust to
> dislodge the panel and set it in motion. Once in motion, the panel
> would be subjected to a combination of lift, tumbling, and rotation in
> the general direction of the wind flow.

> "Working backwards from the point of impact, the origin of the
> panel can thus only be an elevated surface (i.e., roof) in the
> immediate vicinity of the point of impact (i.e., patio). Furthermore,
> the choice of elevated surfaces is limited to those roughly in the path
> of a WSW wind flow, as all other elevated surfaces would either be
> downwind or perpendicular, eliminating the possibility of the panel
> originating there.

> "Analyzing what elevated surfaces are available in the path of a
> WSW wind flow, we find three likely candidates: the 4-plex roof,
> the larger carport roof, and the smaller carport roof. The 4-plex roof
> is immediately adjacent to the patio opening, and as such represents
> a first-order most likely origin of the panel, i.e., the panel placed on
> the roof of the 4-plex would be in the path of the wind and could be
> dislodged from its resting position, blown along the roof, and then
> deposited into the patio. The larger carport roof is another likely
> candidate, as it is approx. 1 ft higher than the 4-plex roof and only
> approx. 9 ft away. A panel placed on that roof would be in the path
> of the wind and could be dislodged from its resting position, blown
> across the gap and along the 4-plex roof, and then deposited into the
> patio. The third candidate is the smaller carport roof, which is

approx. 1 ft lower than the 4-plex roof and only approx. 9 ft away. A panel placed on that roof would also be in the path of the wind and could be dislodged from its resting position, blown across the gap and along the 4-plex roof, and then deposited into the patio.

"Any location other than the above-mentioned three roofs is not a credible source of the panel, because none fits the combined criteria of elevated surface, WSW direction, and immediate vicinity to the patio."

Banjac also cited the forensic chemical analysis of paint samples that indicated the same paint was most likely used on the plywood panel and the roof eave of the apartment building, confirming his opinion that the panel originated on Defendants' property. Snodgrass's analytical testing report stated that he had "approximately 95% confidence that the two paints are actually the same formulation."

Plaintiffs opposed Defendants' motion for summary judgment, arguing Defendants' citation of Banjac's report and argument that the report was inadmissible evidence was insufficient to carry their burden to show Plaintiffs cannot reasonably obtain evidence to prove the origin of the plywood was Defendant's property and thus their causes of action. Plaintiffs further argued that, even if Defendants carried their initial burden on production, there existed a triable issue of material fact whether the plywood board originated on Defendants' property and they breached their duty of care. In support of their opposition, Plaintiffs submitted a separate statement of undisputed material facts and Banjac's declaration in which he, in effect, restated his opinion and reasoning set forth in his preliminary assessment report and expanded on his background (e.g., stating his experience in analyzing the dynamics and trajectories of projectiles and other atmospheric vehicles). In reply, Defendants objected to portions of Banjac's

6

declaration, including those setting forth his opinion and reasoning and the results of Snodgrass's paint sample chemical analysis.

The trial court issued an order granting Defendants' motion for summary judgment. The court first sustained Defendants' objections to the substantive portions of Banjac's declaration. The court then explained its reasoning for granting the motion, stating:

> "A. The court finds that [D]efendants met their burden in moving for summary judgment by adequately showing [P]laintiffs lacked admissible evidence to establish the elements of breach of duty and causation on their causes of action for negligence, premises liability and loss of consortium. [Citation.] Contrary to [P]laintiffs' assertions, the [D]efendants did more than simply rely on [P]laintiffs' deposition testimony indicating a lack of knowledge of where the plywood that hit Solorio was located prior to the accident. [Citations.] The moving papers also proffered Solorio's preliminary expert reports and diagrams outlining [P]laintiffs' proffered theory as to where the board may have come from and addressed why the anticipated opinions and conclusions were inadmissible. [Citation.] The moving papers also showed evidence of the various obstacles between [Solorio's] patio and the theorized locations of the plywood, over which the plywood needed to clear to reach [Solorio's] patio. [Citation.] The moving papers further showed the existence of other potential sources for the plywood, over which the Bisis would have no custody or control. [Citation.]
>
> B. The court finds that the burden therefore shifted to [Plaintiffs] to establish triable issues of material fact through admissible evidence and that [P]laintiffs failed to meet their burden. (Code Civ. Proc., § 437c, subds. (c), (d) and (p)(2).) . . . ."

The trial court entered judgment for Defendants. Plaintiffs timely filed a notice of appeal.

7

DISCUSSION

I

*Summary Judgment Standard of Review*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).)  To meet that burden, a defendant must show that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action.  (*Ibid.*; Code Civ. Proc., § 437c, subd. (p)(2).)  To show that the plaintiff cannot establish at least one element of the cause of action, the defendant must show "the plaintiff *does not possess, and cannot reasonably obtain, needed evidence*." (*Aguilar*, at p. 854, italics added.)  *Aguilar* explained: "The defendant must show that the plaintiff *does not possess* needed evidence, because otherwise the plaintiff might be able to establish the elements of the cause of action; the defendant must also show that the plaintiff *cannot reasonably obtain* needed evidence, because the plaintiff must be allowed a reasonable opportunity to oppose the motion [citation.]" (*Ibid.*, fn. omitted.)  A defendant can meet that burden by relying on the plaintiff's factually inadequate discovery responses if those responses show the plaintiff "will be unable to prove its case by any means." (*Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433, 1439.)  Argument alone is insufficient.  (*Aguilar*, at p. 855.)  If the defendant does not present sufficient evidence to meet its initial burden, the trial court must deny the summary judgment motion.  (*Id*. at p. 850.)

8

If the defendant meets its initial burden of production, the burden shifts to the plaintiff to set forth specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto. (*Aguilar*, *supra*, 25 Cal.4th at p. 849.) If the plaintiff meets that burden, summary judgment should be denied. (*Gaggero v. Yura* (2003) 108 Cal.App.4th 884, 889.) If not, summary judgment for the defendant is appropriate. (*Ibid.*)

On appeal, we review the trial court's ruling on a motion for summary judgment de novo, liberally construe the evidence in favor of the party opposing the motion, and resolve all doubts concerning the evidence in favor of the opposing party. (*Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 460.) In so doing, we resolve all doubts regarding whether any triable issue of material fact exists in favor of the party opposing the motion for summary judgment. (*Barber v. Marina Sailing, Inc.* (1995) 36 Cal.App.4th 558, 562.) In reviewing the trial court's evidentiary rulings, however, we apply the abuse of discretion standard of review. (*Miranda v. Bomel Construction Co., Inc.* (2010) 187 Cal.App.4th 1326, 1335.)

II

*Defendants Did Not Meet Their Initial Burden of Production*

Plaintiffs contend the trial court erred by granting Defendants' motion for summary judgment because they did not carry their initial burden of production to show Plaintiffs do not have, and cannot reasonably obtain, evidence to prove that Defendants caused their injuries and breached their duty of care.

9

## A

Plaintiffs' causes of action for negligence and premises liability require proof that Defendants owed Plaintiffs a duty of care and breached that duty, and the breach was a proximate or legal cause of injuries suffered by Plaintiffs. (*Ann M. v. Pacific Plaza Shopping Center* (1993) 6 Cal.4th 666, 673; *Leslie G. v. Perry & Associates* (1996) 43 Cal.App.4th 472, 480.) To prove causation, Plaintiffs must show it is more likely than not their injuries were the result of Defendants' breach of duty of care (e.g., the board that struck Solorio originated from Defendants' property). (*Leslie G.*, at p. 487.)

## B

Based on our review of the evidence Defendants submitted in support of their motion for summary judgment, we conclude they did not meet their initial burden to show Plaintiffs do not have, and could not reasonably obtain, needed evidence to prove Defendants caused their injuries and breached their duty of care. (*Aguilar*, *supra*, 25 Cal.4th at p. 854.) To the extent Defendants argue Plaintiffs do not have any admissible evidence showing the plywood board originated from Defendants' property, they misconstrue and/or misapply their initial burden of production in moving for summary judgment. Contrary to Defendants' apparent belief, their burden is *not* to show Plaintiffs do not currently possess admissible evidence to show the board originated from Defendants' property, but rather to show Plaintiffs do not possess, and *cannot reasonably obtain*, such evidence. (*Ibid.*) Although Defendants presented evidence showing neither of Plaintiffs had seen the plywood board before the incident and did not know where it came from, Defendants did *not* present *any* evidence showing Plaintiffs *could not*

10

*reasonably* obtain evidence showing the board's origin. Defendants did not show Plaintiffs could not reasonably obtain either percipient testimony or expert testimony that would support a finding the board originated from Defendants' property. Although neither Solorio nor Jiminez knew the board's origin, Defendants did not show Plaintiffs would be unable, with further investigation and/or discovery, locate a percipient witness who could testify that he or she saw the board on Defendants' property before the incident.

More importantly, even if Plaintiffs could not locate such a percipient witness, Defendants did not show Plaintiffs could not reasonably obtain expert testimony that would support a finding the board originated from Defendants' property. In support of their motion for summary judgment, Defendants submitted evidence, including a copy of Banjac's preliminary assessment report, that purportedly showed Plaintiffs did not have admissible evidence to show the board originated from Defendants' property. However, assuming arguendo that report could not be properly admitted at trial, the report indicated Banjac was an expert in engineering, physics, mechanics, and safety and held the opinion (based on available information, his analysis, and the application of scientific principles) that the *most likely* origin of the panel was a roof surface of Defendants' premises (i.e., the apartment building's roof, the larger carport roof, or the smaller carport roof). Rather than showing Plaintiffs could not reasonably obtain evidence to show the board originated from Defendants' property, that report showed, instead, that Plaintiffs likely *would* be able to obtain that evidence. Although the report itself may not have been admissible at trial, Banjac's report, submitted by Defendants in support of their summary

11

judgment motion, showed Plaintiffs had retained an expert witness (i.e., Banjac) who, after an initial assessment, had formed the opinion that the most likely origin of the board was Defendants' property.  To the extent Defendants argue the report does not necessarily show Banjac is an expert qualified to opine on questions of plywood board flight, we conclude Defendants have not shown Plaintiffs will be unable to show Banjac is so qualified at the time of trial.  There is nothing in the record to indicate Banjac would not be able to testify at trial that he has expert knowledge regarding and/or experience with the flight of boards or similar objects through air based on wind direction, speed and other conditions.  We cannot conclude Plaintiffs will be unable to establish an adequate foundation for Banjac to testify as an expert at trial.

Furthermore, although Defendants argue Banjac's opinion is speculative and/or conclusory because the report does not show he conducted any experiments regarding the flight of boards through air and did not sufficiently describe the reasoning for his opinion, that argument does not show Plaintiffs could not reasonably obtain and present that testimony at trial.  Even if Banjac had not conducted any board flight experiments in the past, he may very well have the opportunity to do so prior to trial and thereby provide additional support for his opinion were he to testify at trial.  Furthermore, to the extent Defendants (and the trial court) noted Banjac's report was deficient by inadequately describing his methodology and the facts underlying his opinion and did not describe how the board could have cleared the various obstructions between Defendants' roofs and Solorio's patio, we must liberally construe the evidence in favor of Plaintiffs (*Miller v. Department of Corrections*, *supra*, 36 Cal.4th at p. 460) and therefore infer any such

12

deficiency could be remedied when Banjac testifies at trial. Defendants' moving papers do not show Plaintiffs could not reasonably obtain such testimony from Banjac or another expert.

Finally, to the extent Defendants argue Banjac's opinion is speculative and/or otherwise inadmissible because it does not preclude the possibility that the board could have originated from the property to the west, we disagree. Banjac's report stated other locations would not be "a credible source of the panel" because they do not fit the required criteria. Assuming arguendo there is evidence showing the board may have originated from that neighboring property, that evidence does not necessarily refute Banjac's opinion as a matter of law. Rather, that evidence would be considered by the jury in deciding the factual question of the board's origin. At trial, Plaintiffs will not be required to disprove all other possible origins for the board, but rather to prove the most likely origin was Defendants' property.

Furthermore, in moving for summary judgment, Defendants submitted the analytical testing report of Snodgrass, whose company was retained by Plaintiffs, in which he stated he had "approximately 95% confidence that the two paints are actually the same formulation." Although Defendants argue that report is inadmissible and/or that Banjac could not refer to or rely on that report in forming his opinion, Defendants have not shown Plaintiffs could not reasonably obtain the testimony at trial of Snodgrass or another expert who has tested the board's red paint and red paint from Defendants'

13

apartment building and concluded the two paint samples had the same formulation.[2]

Were Plaintiffs to present such testimony at trial, it presumably would support their theory that the board originated from Defendants' property and provide additional support for Banjac's opinion. To the extent Defendants argue such testing would not necessarily preclude the board from originating somewhere else (e.g., the property to the west), that would merely raise a triable issue of material fact for the jury to decide. If Defendants' theory at trial is that the board originated somewhere else, they presumably could present evidence supporting that theory (e.g., Defendants' own expert regarding flight characteristics of plywood boards and likely origin of the board and their own expert regarding the chemical composition of a neighbor's paint and match to that found on the board that struck Solorio).

Based on the above reasoning, we conclude Defendants did not carry their initial burden to produce evidence showing Plaintiffs do not have, and could not reasonably obtain, needed evidence to show the board that struck Solorio originated from Defendants' property. (Cf. *Cassady v. Morgan, Lewis & Bockus LLP* (2006) 145 Cal.App.4th 220, 240-244 [because defendant did not meet its burden to show plaintiff could not reasonably obtain evidence to prove elements of cause of action, summary judgment should not have been granted]; *Weber v. John Crane, Inc.*, *supra*, 143

---

[2] Even in the absence of such testing and expert testimony, percipient testimony or documentary evidence showing that the board was painted red and Defendants' apartment building is painted red and appears to be similar to the board's red paint may, in itself, provide additional support for Banjac's opinion and/or a finding by the jury that the board's origin was Defendants' property.

14

Cal.App.4th at pp. 1439-1442 [burden did not shift to plaintiff because defendant did not show plaintiff could not reasonably obtain evidence of causation]; *Gaggero v. Yura*, *supra*, 108 Cal.App.4th at pp. 890-893 [burden did not shift to plaintiff because defendant did not show plaintiff could not reasonably obtain evidence to prove element of cause of action].)  Therefore, Defendants did not carry their burden to show Plaintiffs cannot establish the element of causation.  (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850, 854.)  None of the cases cited by Defendants are apposite or persuade us to conclude otherwise.

We likewise conclude Defendants did not carry their initial burden to produce evidence showing Plaintiffs do not have, and could not reasonably obtain, needed evidence to show Defendants breached their legal duty of care.  In moving for summary judgment, Defendants argued Plaintiffs do not have any evidence showing there was a breach of a duty of care regarding securing the plywood board to the roof, citing evidence showing another board on the roof of Defendants' northern metal carport was secured with nails, wire and/or bolts and screws.  However, the fact that there may be evidence showing another board on the metal carport's roof was adequately secured does not necessarily show the board that struck Solorio was similarly adequately secured. Furthermore, Defendants did not present any evidence showing Plaintiffs could not reasonably obtain evidence showing Defendants breached their duty of care by inadequately securing the board to the roof of their property.  Therefore, Defendants did not carry their burden to show Plaintiffs cannot establish the elements of breach of duty. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar*, *supra*, 25 Cal.4th at pp. 850, 854.)

15

Because Defendants did not present sufficient evidence to meet their initial burden, the trial court erred by granting their motion for summary judgment and should, instead, have denied that motion.[3]  (*Aguilar, supra,* 25 Cal.4th at p. 850.)

DISPOSITION

The judgment is reversed.  Plaintiffs are entitled to costs on appeal.


McDONALD, J.

WE CONCUR:


BENKE, Acting P. J.


O'ROURKE, J.

---

[3]    Because we resolve this appeal based on Defendants' failure to meet their initial burden of production, the burden of production never shifted to Plaintiffs and therefore we need not, and do not, address whether Plaintiffs presented any evidence showing the existence of a triable issue of material fact regarding the elements of causation and breach of duty.  (*Aguilar*, *supra*, 25 Cal.4th at pp. 849-850.)