Filed 7/8/14  Modified and Certified for Publication 7/21/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ROSE MARIE GANOE et al., | B248941 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC449400) |
| v. | |
| METALCLAD INSULATION CORPORATION, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie Elias, Judge.  Reversed.

The Arkin Law Firm and Sharon J. Arkin; Farrise Firm and Simona A. Farrise for Plaintiffs and Appellants.

McKenna, Long & Aldridge, Stephen M. Nichols, Farah S. Nicol, Bradford J. DeJardin, David G. Arthur, Caren D. Dombrowski and J. Alan Warfield for Defendant and Respondent.

The plaintiffs Rose Marie Ganoe et al.[1] appeal the trial court's order granting summary judgment in favor of the defendant Metalclad Insulation Corporation (Metalclad). The decedent in this wrongful death action was diagnosed with mesothelioma and sued multiple corporate defendants for exposing him to asbestos at his workplace. Metalclad moved for summary judgment based on (1) the plaintiffs' factually devoid discovery responses, (2) a statement by the decedent's co-worker that he had "never heard of" Metalclad, and (3) a statement by Metalclad's person most knowledgeable that Metalclad had never performed work at the decedent's workplace.

Metalclad subsequently produced a document showing that it *had* performed work at the decedent's workplace. In response, the plaintiffs amended their discovery responses, citing to specific facts linking Metalclad to the decedent's exposure to asbestos. Nevertheless, the trial court granted summary judgment for Metalclad. The plaintiffs now argue that the defendant did not meet its burden of proof as the moving party on summary judgment, and that they also raised triable issues of material fact. We agree and reverse.

### FACTUAL AND PROCEDURAL BACKGROUND

Mark Ganoe (Ganoe) worked as a "utility man" in Department 132 at the Goodyear Tire & Rubber Company plant in Los Angeles from 1968 until 1979. In September 2010, he was diagnosed with mesothelioma. Three months later, he filed the underlying action alleging that the disease was caused by his exposure to asbestos from

---

[1] The plaintiffs are Rose Marie Ganoe, individually and as successor in interest to Mark Ganoe, Daniel Ganoe, Matthew Ganoe and Marie Derks, individually and as legal heirs to Mark Ganoe.

when he worked at the Goodyear plant. Ganoe died during the pendency of this action and the case was converted to a survival and wrongful death action.

On October 12, 2012, Metalclad moved for summary judgment on the grounds that the plaintiffs had no evidence that Ganoe was exposed to asbestos for which Metalclad was responsible. Specifically, Metalclad argued that the plaintiffs had served factually devoid discovery responses and had failed to identify any witnesses that could show that Ganoe worked with or around any asbestos-containing products supplied, installed or removed by Metalclad.

In support of the motion, Metalclad submitted the following evidence: (1) the plaintiffs' boilerplate response to Metalclad's special interrogatory seeking "all facts" regarding Ganoe's exposure to "asbestos-containing product(s) supplied, installed or removed by [Metalclad]"; (2) a "case report" in which the plaintiffs identified Richard Ettress, Ganoe's former co-worker, as their sole product identification witness for Metalclad products and services; (3) an excerpt from Ettress's deposition testimony in which he said he had "never heard of" Metalclad; and (4) a declaration from Metalclad's person most knowledgeable, Don Trueblood, in which he stated that "Metalclad has no information, documents to suggest, or knowledge of having ever performed any work or supplied materials to be used at Good[y]ear Tire & Rubber Company's plant."

On December 19, 2012, approximately two years into this litigation, Metalclad produced a document at Trueblood's deposition showing that it had performed insulation work on steam piping at the Goodyear plant in 1974. Trueblood explained

3

that Metalclad had not performed a search of its records in response to the plaintiffs' discovery requests but had initially provided discovery responses based on a search performed in "another case involving Goodyear Tire & Rubber that was a couple of years prior to this case . . . . " No documents relating to Goodyear were produced in that case, and this newly produced document was only discovered when a search was conducted for a third case, one unrelated to Goodyear.

The plaintiffs then served an amended discovery response to Metalclad's "all-facts" interrogatory with the following facts: (1) Ganoe worked in Department 132 at the Goodyear plant between 1968 and 1979, (2) in "approximately 1974," a new "Banbury machine" and "lay down machine" were added to Department 132 which required "new steam pipes [] to be installed and insulated as well as tied into the existing insulated piping and machinery," (4) the "tie-ins required removal of old insulation," (5) Ganoe was present in Department 132 during all phases of this construction, (6) the "removal of old insulation released in the air asbestos-containing dust that [] Ganoe breathed," (7) outside contractors performed the installation and insulation work, (8) "[a]ccording to [] Ettress, the only work involving insulation performed in 1974" at the Goodyear plant was "the work associated with the installation of the new Banbury and lay-down machines and associated piping," and (9) Metalclad, an insulation contractor, performed insulation work on steam piping in 1974 at the Goodyear plant.

On January 9, 2013, the plaintiffs filed their opposition to the motion for summary judgment and submitted as supporting evidence this amended discovery

4

response, excerpts from the depositions of Ettress, Ganoe and Trueblood, a declaration by an expert witness, and a declaration by Ettress. In Ganoe's deposition, he testified that the "steam lines that went into the Banbury machine[s]" had insulation on them that "looked like dirty chalk," that he was present when the insulation on the steam lines was repaired, that repairing the insulation was "a dusty process," and that he breathed in that dust.

In Ettress's declaration, he stated that he "worked at the Goodyear [] plant in Los Angeles from 1968 until 1979 . . . I worked in the same department as Mark Ganoe during these years. [¶] On or about 1974, a new automated Banbury machine was added in our department and a new lay down machine was added that tied into the existing Banbury 28 machine. When this construction took place, new steam pipes had to be installed and insulated as well as tied into the existing insulated piping and machinery. Outside contractors performed the installation and insulation work . . . I do not recall any other construction requiring installation of insulation during the period of time that I worked at the Goodyear plant." Metalclad asserted evidentiary objections to the declaration on the grounds that certain statements lacked foundation, contradicted previous statements in Ettress's deposition, and were irrelevant. The court overruled these objections.[2]

The expert witness, Charles Ay, opined that "prior to 1972 a rigid, whitish, chalky, pre-formed half round pipe covering was almost certainly asbestos-containing,"

---

[2] Metaclad does not challenge the trial court's ruling on these objections on appeal.

and that "if the material was used for hot pipes in industrial settings, such as a tire manufacturing plant, then" "[t]he probability in such circumstances would exceed ninety-nine percent that the material contains asbestos." Ay further stated that "it is more likely than not that the insulators who performed the insulation work associated with the installation of the new Banbury and lay-down machines at the Goodyear [plant] in 1974 performed the tie-in work to the existing piping and machines . . . [which] required removal of existing insulation . . . that [] more likely than not . . . was asbestos-containing."

In reply, Metalclad argued that it had satisfied its burden on summary judgment based on (1) Ettress's testimony that he could not "identify Metalclad as ever having performed work near Mr. Ganoe," and (2) the plaintiffs' original boilerplate responses to Metalclad's "all-facts" discovery requests. Metalclad also argued that the plaintiffs had failed to raise a triable issue of fact through their amended discovery response because it was speculative to conclude that Metalclad had performed any insulation work in Department 132 or that such insulation work involved the removal of old insulation.

The court granted summary judgment. The court found that the defendant had met its burden of proof, and the plaintiffs had failed to raise a triable issue of fact because (1) the document belatedly produced by Metalclad did not show that it had performed work in the vicinity of Ganoe as it did not identify "specific dates when, and locations within the plant where, the work occurred," (2) Ettress had testified he had no information regarding Metalclad, (3) although Ettress stated that he saw "outside

6

contractors" perform insulation work, he did not identify Metalclad as one of those contractors, and (4) Ay's conclusions were speculative as he was not a percipient witness to the event and had no "personal knowledge" as to whether Metalclad worked in the vicinity of Ganoe. The plaintiffs timely appealed.

## *CONTENTIONS*

The plaintiffs contend that the trial court erred in finding that (1) Metalclad had shifted the burden of proof, and (2) the plaintiffs had not raised any triable issue of material fact.

## *DISCUSSION*

### 1. *Applicable Law*

We review the trial court's summary judgment rulings de novo. (*Scheiding v. Dinwiddie Construction Co.* (1999) 69 Cal.App.4th 64, 69 (*Scheiding*).) " 'In performing our de novo review, we must view the evidence in a light favorable to plaintiff as the losing party [citation], liberally, construing [his] evidentiary submission while strictly scrutinizing [the defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor.' [Citation.]" (*Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96, 100 (*Andrews*).)

A defendant moving for summary judgment must make a prima facie showing that there are no triable issues of fact in order to meet its initial burden of production. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 861.) "[A] defendant moving for summary judgment [must] present evidence, and not simply point out that the plaintiff does not possess, and cannot reasonably obtain, needed evidence." (*Id.* at

7

p. 854.) Circumstantial evidence supporting a defendant's summary judgment motion "can consist of 'factually devoid' discovery responses from which an absence of evidence can be inferred," but "the burden should not shift without stringent review of the direct, circumstantial and inferential evidence." (*Scheiding, supra,* 69 Cal.App.4th at p. 83.) Once the defendant has met that burden, the burden shifts to the plaintiff to make a prima facie showing that a triable issue of material fact exists. (*Aguilar v. Atlantic Richfield Co., supra,* 25 Cal.4th at p. 850.) "A prima facie showing is one that is sufficient to support the position of the party in question. [Citation.] No more is called for." (*Id.* at p. 851.)

### 2. *Metalclad Did Not Meet Its Burden On Summary Judgment*

The trial court held that Metalclad had met its burden as the moving party but did not provide an analysis of the evidence presented by Metalclad. It is unclear whether the trial court considered the plaintiffs' amended response to Metalclad's discovery when it made this determination. Metalclad contends that even if the trial court did consider the plaintiffs' amended response, it would "have no effect on whether Metalclad met its initial burden" because those responses "provided no new facts."[3]

It would be inequitable to allow a moving party to withhold relevant discovery and then meet its burden on summary judgment without consideration of such newly disclosed evidence or the opposing party's response to that evidence. (See *Weber v. John Crane. Inc.* (2007) 143 Cal.App.4th 1433, 1442 ["A motion for summary

---

[3]    Metalclad also contends that the plaintiffs' amended discovery response was unverified, however, there is no evidence that Metalclad ever raised an objection on this ground before the trial court. (See Evid. Code, § 353.)

judgment is not a mechanism for rewarding limited discovery; it is a mechanism allowing the early disposition of cases where there is no reason to believe that a party will be able to prove its case."])  Here, the trial court appeared to adopt this stance as it struck evidence submitted in support of the motion that was contradicted by the newly disclosed document: it sustained the plaintiffs' objection to Trueblood's statement disclaiming knowledge of Metalclad's work at the Goodyear plant.  We will assume, therefore, that the trial court also properly considered the plaintiffs' amended discovery response in determining whether Metalclad had met its burden as the moving party.

Metalclad argues that the plaintiffs' inadequate response to Metalclad's "all facts" discovery request and Ettress's statement that he had "never heard of" Metalclad demonstrated that the plaintiffs could not show the decedent had been exposed to asbestos by Metalclad.  In support of this argument, Metalclad cites to *Andrews, supra,* 138 Cal.App.4th 96 and contends that, as in *Andrews*, the plaintiffs' discovery responses here were "factually devoid."  In *Andrews*, the defendant had propounded "a series of special interrogatories which called for all facts regarding [the plaintiff's] exposure to asbestos from [the defendant's] products," and, in response, the plaintiff provided "little more than general allegations against" the defendant and "d[id] not state specific facts showing that [the plaintiff] was actually exposed to asbestos-containing material from [the defendant's] products."  (*Id.* at p. 104.)

The *Andrews* court held that by failing to provide any information in response to these discovery requests, the plaintiffs admitted that they had no further information. (*Id.* at pp. 106-107.)  "If plaintiffs respond to comprehensive interrogatories seeking all

9

known facts with boilerplate answers that restate their allegations, or simply provide laundry lists of people and/or documents, the burden of production will almost certainly be shifted to them once defendants move for summary judgment and properly present plaintiffs' factually devoid discovery responses. [¶] In short, [the defendant's] discovery was sufficiently comprehensive, and plaintiffs' responses so devoid of facts, as to lead to the inference that plaintiffs could not prove causation upon a stringent review of the direct, circumstantial and inferential evidence contained in their interrogatory answers and deposition testimony." (*Id.* at p. 107.)

Here, unlike in *Andrews,* the plaintiffs' amended response to the defendant's "all-facts" interrogatories did not consist only of "boilerplate answers," "general allegations" and "laundry lists of people and/or documents." By contrast, the response contained "specific facts" showing that Metalclad had exposed Ganoe to asbestos in 1974 by removing asbestos-containing insulation in Department 132 of the Goodyear plant while he was present. Therefore, this response did not lead to an inference that the plaintiffs could not prove causation.

With respect to Ettress's statement that he had "never heard of" Metalclad, Metalclad argues this case in analogous to *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098 (*McGonnell*), where the plaintiff testified he had "never heard of" the defendant Kaiser Gypsum and the court found this was sufficient to negate causation. In *McGonnell*, the plaintiff's job consisted of "maintenance and repair of the plumbing" in a particular building and, after he died of asbestos-related lung cancer, a wrongful death action was filed alleging that he had been exposed to

10

asbestos-containing products when he cut through insulation in the walls. (*Id.* at p. 1101.) The trial court found that the plaintiff, at his deposition, "*was* able to identify the kinds of materials he worked with, and the brand names of some of the products he had used. . . . His failure to place any [of the defendants'] products at his place of employment shifted the burden to plaintiffs to produce some circumstantial evidence to establish exposure to [the defendant's] products." (*Id.* at p. 1104 [emphasis added].)

Here, unlike in *McGonnell*, Metalclad only submitted a two-page excerpt from Ettress's deposition wherein he stated that he had "never heard of" Metalclad. Metalclad did not provide any evidence that Ettress *was* able to identify other contractors who had performed insulation work at the Goodyear plant. This case is more analogous to *Weber v. John Crane, Inc., supra,* 143 Cal.App.4th 1433, where the court found that the defendant had not "made out a prima face case that plaintiffs would be unable to establish that [he] had been exposed to a [defendant] product, by submitting evidence that [the plaintiff] had no recall of the [defendant's] name [] and could not associate any product with that name." (*Id.* at p. 1439.) "That Weber was unable to recall whether he worked around a [defendant] product over 40 years ago suggests only that plaintiffs will not be able to prove their case with Weber's deposition testimony. It cannot be inferred that Weber would have been unable to recognize a [defendant] product had he been shown one, or had he been shown its packaging or its logo. . . . In effect, [the defendant] attempts to shift the burden of producing evidence to plaintiffs by limiting its discovery to a single question that Weber could not be expected to answer affirmatively: his ability to recall products to which he had been exposed

11

over 40 years ago. A negative response to that question simply does not create an inference either of nonexposure or of the inability to prove exposure by some other means." (*Ibid.*)

Here, Ettress was also questioned about events that occurred approximately 40 years prior, but, as in *Weber*, Metalclad did not show Ettress its logo – which Metalclad workers may have displayed when they performed services for clients – and ask Ettress if he recognized it, but merely asked him if he recognized Metalclad's name. The negative response to that question by itself was insufficient to create an inference of nonexposure or that the plaintiffs could not prove exposure by other means. On these grounds, the trial court erred in concluding that Metalclad had shifted the burden of proof.

### 3. *The Plaintiffs Raised Triable Issues of Material Fact*

Even if Metalclad had met its burden as the moving party, summary judgment should have been denied as the plaintiffs raised triable issues of material fact. Metalclad contends that the plaintiffs' opposition to the motion for summary judgment "merely show[ed] a speculative possibility that Metalclad was the outside contractor that performed the insulation work in Department 132 in 1974." In support of this argument, Metalclad argues that, as in *McGonnell,* the plaintiffs' evidence merely created " 'a dwindling stream of probabilities that narrow into conjecture.' " (*McGonnell, supra,* 98 Cal.App.4th at p. 1105.)

In *McGonnell*, as noted above, the plaintiffs alleged that the decedent had been exposed to asbestos when he cut into walls and disturbed building materials that

12

contained asbestos. (*Id*. at p. 1101.) With respect to the defendants' products, the plaintiffs presented evidence that the defendants' invoices showed they had sold wallboard and joint compound to a contractor in 1972 and those materials might have been for a project at the building where decedent worked. (*Ibid.*) However, other evidence showed that the defendants did not use asbestos in its wall board, and that the joint compound only "could have" contained asbestos. (*Ibid.*) The trial court found that "[a]lthough the joint compound was delivered to the contractor a few years before [the decedent] began his employment at [the workplace], it is at least within the realm of possibility that [the decedent] encountered a wall with [the defendants'] joint compound during his 24 years of employment at [the workplace]. [¶] Does this possibility create a triable issue of fact? We think not. It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment. [Citation.] All that exists in this case is speculation that at some time [the decedent] might have cut into a wall that might have contained [the defendants'] joint compound that might have contained asbestos. The evidence creates only 'a dwindling stream of probabilities that narrow into conjecture.' [Citation.]" (*Id.*, at p. 1105.)

The case here is distinguishable from *McGonnell* and presents more than mere speculation of causation. In *McGonnell*, the defendant's product might have contained asbestos, might have been used somewhere in the building where decedent worked, and the decedent might have cut into that product while generally performing plumbing work sometime during his 24 years of employment there. By contrast, here, there was

13

evidence Metalclad performed insulation work on steam piping at the Goodyear plant in 1974, that the only construction work requiring the installation of insulation at the Goodyear plant in 1974 occurred in Department 132 when a new Banbury machine and "lay-down machine" were installed, that the installation of those machines also required the removal of old insulation, and that Ganoe worked in that department, was present during the repair of the steam lines' insulation and breathed in the resulting dust. Furthermore, according to the plaintiffs' expert witness, it was more likely than not that the old insulation removed during this process contained asbestos.[4] Viewed in its best light, this evidence supported a reasonable inference that the plaintiffs could show causation. Therefore, the trial court erred in finding that the plaintiffs had failed to raise a triable issue of fact.

---

[4] We note that the trial court concluded that Charles Ay's conclusions were "speculative" because he "was not present at the relevant Goodyear plant during the alleged exposure period" and had no "personal knowledge" as to whether Metalclad worked in the vicinity of Ganoe. Whether Ay had personal knowledge of the facts and opinions in his declaration speaks to the foundation for this evidence. However, he was an expert witness and his statements were not based on his having personally witnessed Ganoe's exposure to asbestos 40 years prior, but on his extensive work experience. Ay provided evidence that he had been qualified as an expert witness in over 100 asbestos-related injury cases over the past 16 years, he had worked as a "pipe coverer, insulator and asbestos worker" for 25 years, he had been certified and trained about safety issues related to asbestos, and, after reviewing the testimony of Ganoe and Ettress as well as Metaclad's record of performing work at the Goodyear plant, he had concluded that the installation of new Banbury and lay-down machines at the Goodyear plant in 1974 required removal of insulation that more likely than not contained asbestos. Ay's experience provided an adequate foundation for this opinion. Nor was it speculative for Ay to conclude that installation of the new machines involved the removal of insulation, or that, in 1974, old insulation removed from "chalky" "hot pipes used in industrial settings" more likely than not contained asbestos.

## *DISPOSITION*

The judgment is reversed.  The plaintiffs are awarded their costs on appeal.


### *NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS*


CROSKEY, J.

WE CONCUR:


KLEIN, P. J.


ALDRICH, J.

*CERTIFIED FOR PUBLICATION*


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE


| | |
|---|---|
| ROSE MARIE GANOE et al., | B248941 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC449400) |
| v. | |
| METALCLAD INSULATION CORPORATION, | ORDER (1) MODIFYING OPINION (2) CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | [NO CHANGE IN JUDGMENT] |


THE COURT:

The opinion filed in this matter on July 8, 2014 is hereby modified as follows:

On page 2, paragraph 2, line 5, delete the following sentence: The plaintiffs now argue that the defendant did not meet its burden of proof as the moving party on summary judgment, and that they also raised triable issues of material fact.

Replace with the following sentence:  The plaintiffs now argue that the defendant did not meet its burden of proof as the moving party on summary judgment, and that plaintiffs have raised triable issues of material fact.

When the opinion in this matter was originally filed, it was not certified for publication.  For good cause now appearing, it is hereby ordered that the opinion in this matter, filed on July 8, 2014 is certified for publication.

[NO CHANGE IN JUDGMENT]