Filed 6/24/15  Quiroz v. BNSF Railway CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| TERESA QUIROZ et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>BNSF RAILWAY COMPANY,<br><br>Defendant and Respondent. | B250165<br><br>(Los Angeles County<br> Super. Ct. No. BC460217/JCCP<br> 4674) |

        APPEAL from a judgment of the Superior Court of Los Angeles County, Emilie H. Elias, Judge.  Affirmed.

        Waters Kraus & Paul, Paul C. Cook and Michael B. Gurien for Plaintiffs and Appellants.

        SIMS Law Firm and Selim Mounedji for Defendant and Respondent.

Plaintiffs Teresa Quiroz, on her own behalf and as successor in interest to decedent Benjamin P. Thoms (Thoms), Tamara A. Rose, and Donald P. Thoms appeal from a summary judgment granted in favor of defendant BNSF Railway Company (BNSF) on plaintiffs' complaint for claims related to Thoms' alleged exposure to asbestos while working for BNSF. We conclude, as did the trial court, that plaintiffs failed to establish a triable issue of material fact regarding whether Thoms was exposed to asbestos during his BNSF employment. We therefore affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Thoms worked for BNSF and its predecessor, the Atchison Topeka and Santa Fe Railway Company (ATSF), from 1966 to 2004. Initially, he worked as a switchman in ATSF's railroad yard in Barstow, switching train cars to different tracks. Later he worked as a brakeman and a conductor.

Thoms was diagnosed with mesothelioma in December 2010. The initial complaint was filed in April 2011, his deposition was taken in July 2011, and he died in September 2011. In December 2011, plaintiffs filed the operative first amended complaint (hereafter the complaint) for wrongful death against several defendants, including BNSF, alleging causes of action for negligence, strict liability, false representation, intentional tort/intentional failure to warn. Plaintiffs further alleged causes of action against BNSF for premises liability and for liability under the Federal Employers Liability Act (FELA).[1] BNSF is the sole remaining defendant.

---

[1] FELA provides in part: "Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and

2

BNSF demurred to the complaint on the ground that FELA was the exclusive remedy against a railroad employer for the death of or injury to a railroad employee. The parties entered into a stipulated order to proceed only on the FELA claim and dismiss the causes of action for negligence, strict liability, false representation, intentional tort/intentional failure to warn, and premises liability.

BNSF moved for summary judgment as to the sole remaining claim under FELA. BNSF's motion for summary judgment argued that plaintiffs were required but failed to prove negligence under FELA, that plaintiffs did not have and could not provide evidence to establish Thoms' exposure to asbestos while employed by BNSF, and that plaintiffs' claims were preempted by the Locomotive Boiler Inspection Act and the Safety Appliance Act. Plaintiffs opposed the motion and filed evidentiary objections to BNSF's declarations. Plaintiffs also filed a declaration by Phillip John Templin, an industrial hygienist. The trial court sustained plaintiffs' evidentiary objections, and the admissible evidence will be discussed in more detail below.

The court granted BNSF's summary judgment motion. The trial court rejected BNSF's argument that the FELA claim was preempted by the other statutes cited by BNSF, but held that plaintiffs had failed to raise a triable issue whether Thoms was exposed to asbestos during his employment with BNSF. The court entered judgment in favor of BNSF.

_____

children of such employee . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." (45 U.S.C. § 51.) "'To prevail on a FELA claim, a plaintiff must "prove the traditional common law elements of negligence: duty, breach, foreseeability, and causation."' [Citation.]" (*Southern California Regional Rail Authority v. Superior Court* (2008) 163 Cal.App.4th 712, 739.)

**DISCUSSION**

Plaintiffs contend the trial court erred in finding that BNSF had shifted the burden of production on summary judgment, and that plaintiffs had not raised a triable issue of material fact.[2] We disagree.

I. *Summary Judgment Standard*

"'We review the trial court's summary judgment rulings de novo, viewing the evidence in a light favorable to the plaintiff as the losing party, liberally construing the plaintiff's evidentiary submission while strictly scrutinizing the defendant's own showing, and resolving any evidentiary doubts or ambiguities in the plaintiff's favor.' [Citation.]

"A motion for summary judgment must be granted 'if all the papers submitted show that there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.' (Code Civ. Proc., § 437c, subd. (c).) A defendant has met its burden of showing that a cause of action has no merit if it has shown that one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. Once the defendant has met that burden, the burden shifts to the plaintiff to show a triable issue of one or more material facts exists as to that cause of action. [Citations.]

---

[2] BNSF contends that plaintiffs lack standing to pursue a FELA claim because FELA claims can be brought only by the employee's "personal representative, for the benefit of the surviving widow or husband and children of such employee." (45 U.S.C. § 51.) Because we affirm the grant of summary judgment on other grounds, we need not consider this issue.

4

"'In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers . . . and all inferences reasonably deducible from the evidence . . . .' (Code Civ. Proc., § 437c, subd. (c).) In some instances, however, 'evidence may be so lacking in probative value that it fails to raise any triable issue.' [Citation.]" (*Whitmire v. Ingersoll-Rand Co.* (2010) 184 Cal.App.4th 1078, 1083-1084 (*Whitmire*).)

"'A threshold issue in asbestos litigation is exposure to the defendant's product. . . . If there has been no exposure, there is no causation.' [Citation.] Plaintiffs bear the burden of 'demonstrating that exposure to . . . asbestos products was, in reasonable medical probability, a substantial factor in causing or contributing to [Thoms'] risk of developing cancer.' [Citation.] 'Factors relevant to assessing whether such a medical probability exists include frequency of exposure, regularity of exposure and proximity of the asbestos product to [Thoms].' [Citation.] Therefore, '[plaintiffs] cannot prevail against [BNSF] without evidence that [Thoms] was exposed to asbestos-containing materials manufactured or furnished by [BNSF] with enough frequency and regularity as to show a reasonable medical probability that this exposure was a factor in causing the plaintiff's injuries.' [Citations.]" (*Whitmire*, *supra*, 184 Cal.App.4th at p. 1084; see also *Izell v. Union Carbide Corp.* (2014) 231 Cal.App.4th 962, 968-969 (*Izell*)["'In the context of a cause of action for asbestos-related latent injuries, the plaintiff must first establish some threshold *exposure* to the defendant's defective asbestos-containing products, *and* must further establish in reasonable medical probability that a particular exposure or series of exposures was a "legal cause" of his injury, i.e., a *substantial factor* in bringing about the injury.'"].) We conclude that plaintiffs have failed to establish the threshold exposure to any asbestos-containing products.

5

## II.    *BNSF Met Its Initial Burden*

"A defendant moving for summary judgment is entitled to summary judgment if he or she either conclusively negates an element of the plaintiff's cause of action, or shows that the plaintiff cannot establish at least one element of the cause of action.  [Citation.]"  (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 176, citing *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 853.)  "[T]he defendant may show through factually devoid discovery responses that the plaintiff does not possess and cannot reasonably obtain needed evidence.  [Citations.]"  (*Collin v. CalPortland Co.* (2014) 228 Cal.App.4th 582, 587-588 (*Collin*).)  Here, BNSF showed that plaintiffs did not possess and could not reasonably obtain needed evidence regarding Thoms' exposure to asbestos during his BNSF employment.[3]

According to plaintiffs, Thoms was exposed to asbestos in three aspects of his employment with BNSF:  changing railcar brake shoes, being in the vicinity of

---

[3]    Plaintiffs argue extensively that BNSF failed to satisfy its initial burden by affirmatively negating an element of plaintiffs' cause of action, discussing purported infirmities in the declarations submitted by BNSF from Larry Liukonen, James Shea, and David Malter.  We need not consider this issue, because we conclude that BNSF has successfully shown that plaintiffs do not possess and cannot reasonably obtain needed evidence.  (*Collin*, *supra*, 228 Cal.App.4th at p. 587.)  The trial court sustained plaintiffs' objections to statements in Liukonen's, Shea's, and Malter's declarations based on, inter alia, lack of foundation, inadmissible hearsay, and failure to set forth admissible evidence.  BNSF has not challenged the court's evidentiary rulings.  In determining whether BNSF has met its burden on summary judgment, we consider only the evidence that was admitted.  (See *Belasco v. Wells* (2015) 234 Cal.App.4th 409, 419 [in reviewing the trial court's grant of summary judgment, we consider "'all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports.'"].)

6

insulation removal from refrigerator cars, and staying in a boarding house run by the railroad that had insulation-covered pipes in the room where he slept.

Thoms' work as a brakeman involved inspecting the train for hand brakes and watching the train as it drove, "keeping an eye on the train for . . . brake shoes burning up ." Although changing brake shoes was not a regular part of his job, Thoms stated in his deposition that he was "continuously" in the vicinity when brake shoes were being replaced.[4] He described it as a "dirty job," but he was not sure if the brake shoes were made of cloth or asbestos.

Concerning refrigerator cars, he stated that he frequently observed refrigeration insulation being ripped out of refrigerator cars, which caused the air to become "dusty and dirty." Regarding insulated pipes, Thoms stated that from 1966 to 1967, he often stayed at the Harvey House, a boarding house for train crews, in order to avoid a long commute home. According to Thoms, there were steam pipes covered in insulation in the basement where he slept. Trains frequently rode past, causing the building to shake vigorously and dust to be shaken from the pipes and the ceiling onto him.

In support of its motion for summary judgment, BNSF filed declarations from James Shea (an industrial hygienist who worked for BNSF from 1988 to 2001), David Malter (an industrial hygienist who worked for ATSF from 1980 to 1987), and Larry Liukonen (an industrial hygienist).[5] BNSF also submitted

---

[4] Thoms stated that he occasionally replaced the brake shoe when the train was "out on the road," but he gave no indication as to how often that occurred. In response to questioning, he described it as "many, many times," but there was no further specificity regarding his possible dates of exposure to brake shoe repair.

[5] At oral argument, plaintiffs' counsel cited Liukonen's declaration to argue that BNSF conceded that Thoms was exposed to asbestos in his work as a brakeman. However, the cited statement does not support plaintiffs' contention. Liukonen stated

7

declarations of Karen McKee and David Clark, two BNSF employees who stated that, although they were named by plaintiffs as witnesses, they had no personal knowledge regarding Thoms' alleged exposure to asbestos. In addition to its own declarations, BNSF submitted excerpts of plaintiffs' responses to general and special interrogatories, plaintiffs' case report, excerpts of Thoms' deposition, and Thoms' work history sheet, which was incorporated by reference in plaintiffs' responses to general interrogatories.

The excerpts of Thoms' deposition submitted by BNSF showed, in pertinent part, that, although Thoms changed brake shoes numerous times during his employment, he was not sure if the brake shoes were cloth or asbestos. He also stated that he never complained to BNSF about dust or not receiving a respirator, and that BNSF was "good about providing you with safety equipment" because safety "was one of their main concerns." Thoms further acknowledged that he had no personal knowledge whether he was actually exposed to asbestos while working for BNSF. He stated that he became aware of the possibility when BNSF "started putting up the warning signs that [he] was around asbestos."

Plaintiffs contend that BNSF cannot rely on Thoms' lack of personal knowledge regarding asbestos exposure to satisfy its initial burden. They cite *Weber v. John Crane, Inc.* (2006) 143 Cal.App.4th 1433 (*Weber*), which held that the defendant employer, John Crane, Inc., did not make "a prima facie case that

that "Railroad brake shoes were manufactured with some chrysotile asbestos in the wear stock, primarily in the 1970s. The potential release of asbestos from these types of shoes has been studied extensively and it has been shown that they do not create a significant exposure to asbestos. That is true even while the asbestos-containing shoes are being changed. Thus, changing the brake shoes as described by Mr. Thoms at his deposition would not create any exposure to asbestos." (Fns. omitted.) Liukonen's statement is not a concession that Thoms was exposed to asbestos in his work as a brakeman.

8

plaintiffs would be unable to establish that [the employee] had been exposed to a John Crane product, by submitting evidence that Weber had no recall of the name John Crane, Inc., and could not associate any product with that name." (*Id.* at p. 1439.) The court explained that the employee's inability "to recall whether he worked around a John Crane product over 40 years ago suggests only that plaintiffs will not be able to prove their case with [his] deposition testimony." (*Ibid.*)

However in the present case, unlike *Weber*, BNSF did not rely solely on the plaintiff's testimony to assert there was no triable issue of fact. BNSF also relied on plaintiffs' responses to general and specific interrogatories, plaintiffs' case report, and Thoms' work history sheet. Thus, unlike the defendant in *Weber*, BNSF conducted discovery "designed to ascertain what evidence plaintiffs had beyond the statements of [Thoms] himself." (*Weber*, *supra*, 143 Cal.App.4th at p. 1436.)

This case therefore is analogous to *Andrews v. Foster Wheeler LLC* (2006) 138 Cal.App.4th 96 (*Andrews*), which *Weber* distinguished. In *Andrews*, as here, the defendant "propounded a series of special interrogatories which called for all facts regarding [the employee's] exposure to asbestos." (*Id.* at p. 104.)

BNSF's special interrogatory No. 1 asked, in specific detail, for all facts supporting plaintiffs' contention that BNSF was liable under FELA. Plaintiffs' response merely repeated the allegation in the complaint that throughout Thoms' employment, he "was required to work with and around asbestos-containing products in [BNSF's] various railroad shops and facilities, including the shops and facilities, in and around the State of California." They also repeated the allegation that Thoms "was engaged in the course of his employment at [BNSF's] facilities in and around California as a switchman and brakeman, and in other various roles and capacities where he was required and caused to work with and in the vicinity of

9

toxic substances including asbestos and asbestos-containing products and materials which caused him to suffer severe and permanent injury to his person."

Plaintiffs' interrogatory response is not sufficient to raise an issue whether Thoms was exposed to asbestos. It asserts mere conclusions, without specific facts to show, or from which one might infer, that Thoms was actually exposed to asbestos in any aspect of his employment with BNSF. (See *Andrews*, *supra*, 138 Cal.App.4th at p. 104 [plaintiff's special interrogatory answer "contains little more than general allegations against [the defendant] and does not state specific facts showing that [the plaintiff] was actually exposed to asbestos-containing material from [the defendant's] products."].)

In response to special interrogatory No. 3, asking plaintiffs to identify all documents supporting their claim, plaintiffs cited their responses to the general interrogatories, including Thoms' work history sheet and plaintiffs' case report, the complaint, and Thoms' deposition. These documents, however, do not contain facts sufficient to support plaintiffs' claim.

Thoms' work history sheet showed that, in his employment with BNSF, Thoms worked "around," but not "with," refrigeration, insulation, and brakes that "may have" contained asbestos. There were no details regarding any manufacturers or specific products that exposed Thoms to asbestos. By contrast, Thoms' work history sheet detailing Thoms' alleged exposure to asbestos during his Navy service specified the manufacturers of the boilers, pumps, steam traps, valves, and gaskets that may have contained asbestos. Similarly, Thoms' work history sheets regarding construction work from 1960 to 1966 and as a laborer in 1963 specified the manufacturers of materials with which Thoms worked that may have contained asbestos. The lack of specificity in plaintiffs' work history sheet regarding asbestos exposure while working for BNSF strongly suggests that

10

plaintiffs did not possess and could not reasonably obtain needed evidence to prove that critical element of their cause of action.

Similarly, the complaint, cited by plaintiffs as a document supporting their claim, contains only the following general allegations, repeated verbatim in plaintiffs' response to the special interrogatory: Thoms "was required to work with and around asbestos-containing products in [BNSF's] various railroad shops and facilities," and he "was engaged in the course of his employment at [BNSF's] facilities in and around California as a switchman and brakeman, and in other various roles and capacities where he was required and caused to work with and in the vicinity of toxic substances including asbestos and asbestos-containing products and materials."

Thoms' deposition also contains only general statements, describing the air becoming "dusty and dirty" when Thoms watched insulation being removed from refrigeration cars, and dust being shaken from the pipes and ceiling in the basement of the Harvey House. Such statements "assume[], without any evidentiary support, that the dust and debris [to which Thoms was exposed] contained asbestos." (*Casey v. Perini Corp.* (2012) 206 Cal.App.4th 1222, 1230 (*Casey*).)

BNSF's "discovery was 'sufficiently comprehensive, and plaintiffs' responses so devoid of facts, as to lead to the inference that plaintiffs could not prove causation upon a stringent review of the direct, circumstantial and inferential evidence contained in their interrogatory answers and deposition testimony.' [Citation.]" (*Casey*, *supra*, 206 Cal.App.4th at p. 1231.) Thus, BNSF successfully shifted the burden to plaintiffs to show a triable issue of material fact as to his exposure to asbestos during his employment with BNSF. (*Whitmire*, *supra*, 184 Cal.App.4th at p. 1084.)

11

III.   *Plaintiffs Failed to Raise a Triable Issue of Material Fact*

In opposition to the summary judgment motion, plaintiffs introduced a declaration from Phillip Templin, an industrial hygienist with numerous years of experience in occupational safety and health and asbestos-related issues. Plaintiffs also submitted excerpts of Thoms' deposition, a copy of their complaint, and an exhibit setting forth their product identification witnesses.

A.   *Templin's Declaration Does Not Create an Issue of Material Fact*

Templin reviewed literature regarding mesothelioma among railroad workers and Thoms' deposition testimony.[6] According to Templin, prior to the mid-1970s and during the time Thoms worked for BNSF, railroad car brakes contained asbestos. In support of his conclusion, Templin attached letters written by three brake manufacturers and deposition testimony of an industrial hygienist for CSX Transportation in a different case, stating that manufacturers began removing asbestos from railroad brake shoes in the 1970s. Templin opined that Thoms' repair work on the brakes and the repair work done in his presence exposed Thoms to asbestos levels "far in excess of ambient concentrations."

---

[6]   Specifically, Templin relied on the following: (1) an article from 1986, "A Population-based Case-Control Study of Mesothelioma Deaths among U.S. Railroad Workers"; (2) a paper, "Mesotheliomas among Railroad Workers in the United States"; (3) three letters dated November 1985 from railroad brake shoe manufacturers to Seaboard System Railroad, Inc.; (4) 2009 deposition testimony of Mark Badders, manager of public safety and health programs for CSX Transportation, in a Tennessee lawsuit against CSX Transportation, Inc.; (5) proceedings of the 1935 meeting of the Association of American Railroads, Medical and Surgical Section; and (6) a report of a 1932 meeting of the National Safety Council .

Templin further stated that the insulation from the refrigerator cars to which Thoms was exposed contained asbestos and that Thoms was exposed to respirable asbestos in the Harvey House due to the steam pipe insulation being disturbed by passing trains. He concluded that Thoms' presence during work on the refrigeration insulation and railroad car brakes, as well as the dust released from the insulation at the Harvey House exposed Thoms to respirable asbestos fibers in amounts that increased his risk of developing an asbestos-related illness.

The fatal flaw in Templin's declaration is that it fails to provide any evidence to show that the brakes to which Thoms was exposed, or the insulation in refrigerator cars or on the pipes at the Harvey House, actually contained asbestos. Templin's statement that railway car brakes contained asbestos prior to the late 1970s is far too general to create an issue of material fact. There was no specific evidence regarding the manufacturers of the brakes to which Thoms was exposed, the dates of Thoms' alleged exposure, or how changing of brake shoes resulted in the creation of asbestos dust. Although Templin relied on letters from three specific brake manufacturers, there was no evidence that any of these manufacturers made the brakes on which Thoms worked. Moreover, although one of the letters, from Abex Corporation, acknowledged that brake shoes prior to 1976 contained lead and asbestos, the letters from the other two manufacturers simply stated that their brake shoes are asbestos-free at the time of the letters, November 1985. The letter from Railroad Friction Products Corporation specifically stated that, prior to August 1980, their products "may or may not have contained asbestos depending on the product and the specific date in question." Thus, the letters on which Templin relied actually show the paucity of plaintiffs' evidence of exposure to asbestos from brakes.

13

Templin stated that "[a]sbestos insulation was used as an insulator in railway refrigerator car insulation, and workers present during repairs of insulated cars were at risk of significant asbestos exposure." However, the two articles on which he relied, "A Population-based Case-Control Study of Mesothelioma Deaths among U.S. Railroad Workers" from 1986 and "Mesotheliomas among Railroad Workers in the United States," do not provide sufficient foundation to raise a triable issue as to whether Thoms was exposed to asbestos while watching refrigerator car repair. The first article stated the following regarding insulated railroad cars: "The carmen (car repairers) had potential asbestos exposure during repair of insulated cars." The article later stated that the primary use of asbestos in the railroad industry was in the area of steam engine repair, but "[o]ther sources of potential asbestos exposure included . . . refrigerator car insulation." Moreover, the first article studied railroad workers who held jobs prior to 1959, stating that "[s]team engines were replaced by diesels in the 1950's, and exposures to asbestos markedly decreased during that decade." The second article focused on insulation wrapped around the boilers of steam locomotives and does not address refrigerator car insulation. The two articles thus do not purport to show that the refrigerator car insulation and the "dusty and dirty" air to which Thoms was exposed contained asbestos. Nor did Templin provide any facts regarding the manufacturer of the insulation to which Thoms was exposed.

Templin's statement regarding the Harvey House is similarly general and nonspecific, with no facts to establish that the insulation covering the steam pipes contained asbestos. He did not state that all or most residential pipe insulation in 1966 and 1967 was made of asbestos. Templin described the basement, quoting Thoms' testimony that the basement "had steam lines that ran through the room and were '. . . insulated to keep from rubbing against them and getting burned

14

because you had hot steam.' [Citation.] The steam lines passed through the ceiling of the basement and were approximately three inches wide. [Citation.] In addition, Mr. Thoms described the conditions of the Harvey House as 'real dusty in that whole building . . . all the time. . . .' [Citation.] Mr. Thoms testified trains passing by the Harvey House would cause 'continuous rattling and shaking' and this would 'shake the dust off the ceilings and the pipes.' [Citation.]" Templin subsequently gave his opinion, which consisted in full of the following statement: "It is my further opinion, to a reasonable degree of scientific certainty appropriate to the field of industrial hygiene, and based on my review of the above materials [detailed in fn. 6, *supra*], my education, training and personal experience, that Mr. Thoms was exposed to significant amounts of respirable asbestos while boarding for three to four days a week in 1966 in the basement of the Harvey House, from steam-pipe insulating materials that were disturbed by the 'continuous rattling and shaking' of the pipes caused by the passing trains."

Templin's statement cites no evidence that the insulation contained asbestos, or evidence regarding the content of the dust that fell from the ceiling and pipes, or the amount of dust that was shaken loose. (See *Casey*, *supra*, 206 Cal.App.4th at p. 1230 [plaintiff's answer to special interrogatory "*assumes*, without any evidentiary support, that the dust and debris allegedly disturbed by [defendant's] workers contained asbestos"].) The only bases for his opinion are his education and training and the two general articles regarding mesothelioma among railroad workers. He gives no basis to support his opinion that the dust in the air of the Harvey House basement contained asbestos.

Plaintiffs' reliance at oral argument on *Ganoe v. Metalclad Insulation Corp.* (2014) 227 Cal.App.4th 1577 (*Ganoe*), is unavailing. In *Ganoe*, the defendant manufacturer, Metalclad Insulation Corporation, moved for summary judgment,

15

relying on the plaintiffs' factually devoid discovery responses, a statement by the decedent's coworker that he had never heard of Metalclad, and a statement by Metalclad that it had never performed work at or supplied materials to the decedent's workplace, a Goodyear Tire & Rubber Company plant. However, approximately two years into the litigation, Metalclad submitted evidence that it had, in fact, performed insulation work at the Goodyear plant. In response, the plaintiffs amended their discovery responses, "citing to specific facts linking Metalclad to the decedent's exposure to asbestos." (*Id.* at p. 1579.) On appeal, the court reversed the trial court's grant of summary judgment in favor of Metalclad. (*Ibid.*)

Plaintiffs here rely on a footnote in *Ganoe*, in which the court rejected the trial court's conclusion that the *Ganoe* plaintiffs' expert witness opinion was too speculative to create a triable issue of fact. (*Ganoe, supra*, 227 Cal.App.4th at p. 1586, fn. 4.) *Ganoe* is distinguishable.

First, the defendant in *Ganoe* based its summary judgment motion on the plaintiffs' alleged inability to show exposure to asbestos products tied to Metalclad – thus, they relied on the coworker's statement that he had never heard of Metalclad and Metalclad's own statement that it had never performed work at the Goodyear plant. The question, therefore, was focused not on whether there was asbestos where the decedent worked, but on whether the asbestos products were supplied or installed by Metalclad. By contrast, here, BNSF argued that plaintiffs were unable to produce evidence to establish "'some threshold *exposure*'" to asbestos at all during his tenure at BNSF. (*Izell, supra*, 231 Cal.App.4th at p. 968.)

The expert opinion in *Ganoe* and, in particular, the bases for that opinion, are quite different from Templin's declaration and the grounds he set forth for his opinion. In *Ganoe*, the plaintiff's expert witness "provided evidence that he had

16

been qualified as an expert witness in over 100 asbestos-related injury cases over the past 16 years, he had worked as a 'pipe coverer, insulator and asbestos worker' for 25 years, [and] he had been certified and trained about safety issues related to asbestos." (*Ganoe, supra*, 227 Cal.App.4th at p. 1586, fn. 4.)  In addition, he reviewed the testimony of the decedent and the decedent's coworker and Metalclad's record of performing work at the Goodyear plant.  This evidence showed that in 1974, new machines installed in an area at the Goodyear plant where the decedent worked required installation of insulated piping and removal of old insulation, which released asbestos-containing dust.  The plaintiffs also submitted evidence that Metalclad performed insulation work on piping in 1974 at the Goodyear plant.  The decedent described his presence during the work and described insulation "that 'looked like dirty chalk.'" (*Id.* at p. 1580.)

Thus, the plaintiffs in *Ganoe* presented specific evidence regarding the decedent's exposure to asbestos due to a specific event tied to the defendant – the 1974 installation of the machinery, the piping and the insulation, with a description of the insulation.  (See *Ganoe*, *supra*, 227 Cal.App.4th at p. 1580.)  In contrast to *Ganoe*, Templin's opinion was based in part on Thoms' testimony that insulated steam lines ran through the ceiling of the basement of the Harvey House and it was "real dusty . . . all the time."  However, plaintiffs produced no evidence that the dust to which Thoms was exposed contained asbestos.  (See *Casey*, *supra*, 206 Cal.App.4th at p. 1233 ["Notably absent is any factual support for the proposition that the challenged jobsites contained asbestos during the relevant time period."].)  "Without knowledge of certain foundational facts, an expert's opinion is 'simply too tenuous to create a triable issue' regarding causation.  [Citation.]" (*Id.* at p. 1234.)

17

"The mere 'possibility' of exposure does not create a triable issue of fact. [Citation.] 'It is not enough to produce just some evidence. The evidence must be of sufficient quality to allow the trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment.' [Citation.] Notably, '[p]laintiffs cannot manufacture a triable issue of fact through use of an expert opinion with self-serving conclusions devoid of any basis, explanation or reasoning.' [Citation.] '[A]n expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based.' [Citation.]" (*Andrews, supra*, 138 Cal.App.4th at p. 108; see also *McGonnell v. Kaiser Gypsum Co.* (2002) 98 Cal.App.4th 1098, 1106 ["An expert's speculations do not rise to the status of contradictory evidence, and a court is not bound by expert opinion that is speculative or conjectural. [Citations.]"].) Templin's declaration does not establish a triable issue of material fact as to whether Thoms was actually exposed to asbestos.

B. *Thoms' Deposition, The Complaint, and The Product Identification Witnesses List Do Not Create an Issue of Material Fact*

As discussed above, Thoms' deposition and plaintiffs' complaint contain only general allegations, with no specific facts to create an issue of material fact regarding whether he was actually exposed to asbestos.[7]

---

[7] The excerpts of Thoms' deposition submitted by plaintiffs did not differ significantly from those submitted by BNSF. The excerpts submitted by plaintiffs contain more details about Thoms and the situations in which he observed the repair of refrigeration units and brake shoes. Plaintiffs also included Thoms' testimony that trains frequently drove by on the track in front of the Harvey House, causing the building to shake vigorously and causing dust to be shaken off the ceiling and the pipes onto the people in the basement. However, there were no more details in the excerpts submitted

The only product identified in plaintiffs' product identification witness list regarding their claim against BNSF is Thermo King insulated refrigeration units. However, plaintiffs dismissed Thermo King from the action prior to the summary judgment proceeding, and they submitted no other facts regarding Thermo King refrigeration units. In addition, the only witnesses named in this list are Clark and McKee. As noted above, Clark and McKee both stated in declarations that they had no personal knowledge regarding Thoms' alleged exposure to asbestos.

Plaintiffs' evidence is too "'lacking in probative value'" to raise a triable issue that Thoms was actually exposed to asbestos during his employment with BNSF. (*Whitmire*, *supra*, 184 Cal.App.4th at p. 1084.) "Although a party may rely on reasonable inferences drawn from direct and circumstantial evidence to satisfy its burden on summary judgment, we do not draw inferences from thin air. [Citations.] Likewise, a mere possibility that [Thoms] was exposed to [asbestos] is not enough to create a triable issue of fact. [Citations.]" (*Collin*, *supra*, 228 Cal.App.4th at p. 592.) Not only have plaintiffs failed to identify any specific products Thoms worked around, they have presented no evidence that any of the products that Thoms worked around contained asbestos. This case therefore is unlike *Hernandez v. Amcord, Inc.* (2013) 215 Cal.App.4th 659, which plaintiffs rely upon. In *Hernandez*, the plaintiff identified the specific product and manufacturer and described his work with the product. (See *id.* at pp. 664-665, 673-674.)

---

by plaintiffs to establish that the refrigeration insulation, brake shoes, or dust in the basement of the Harvey House contained asbestos.

19

The trial court properly granted summary judgment in favor of BNSF.[8]

## DISPOSITION

The judgment is affirmed.  BNSF shall recover its costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P.J.


We concur:


MANELLA, J.


COLLINS, J.

---

[8]     In light of our conclusion that plaintiffs failed to raise a triable issue of Thoms' exposure to asbestos, we do not reach BNSF's arguments regarding the issues of negligence and preemption of plaintiffs' FELA claim.